**Glen DAUGHERTY, Petitioner,**

v.

**DEAN JONES COAL COMPANY;
Office of Workers Compensation
Program, Respondents.**

No. 88–1382.

United States Court of Appeals,
Fourth Circuit.

Submitted July 28, 1989.

Decided Nov. 22, 1989.

H. Ronnie Montgomery, Jonesville, Va., on brief, for petitioner.

Mark E. Solomons, Laura Metcoff Klaus, Arter & Hadden, Washington, D.C., on brief, for respondents.

Before MURNAGHAN, SPROUSE and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

Glen Daugherty appeals from an order of the Benefits Review Board denying him black lung benefits. Finding that the Board did not properly consider relevant medical evidence, we remand.

The claimant, employed twenty-nine years entirely in the coal mines, was approaching fifty-three years of age when he applied for benefits in 1976 under the Black Lung Benefits Act, 30 U.S.C. §§ 901, *et seq.* By the time the case was administratively determined and an appeal filed in this court, he was sixty-five. After experiencing respiratory problems, he underwent an exploratory thoracotomy in 1976—an x-ray having disclosed a mass in one area of a lung. Dr. M.W. Phillips performed the thoracotomy and removed a biopsy specimen from the mass. He forwarded his report and slides of the specimen to Dr. L.W. Rogers, a pathologist, who analyzed it and reported his conclusions.

The issue on this appeal was created by conflicting medical views concerning the biopsy sample produced by Dr. Phillips and a dispute as to what it indicated. From the period 1976 to 1985, Daugherty was the subject of extensive medical examinations, including general examinations, numerous x-rays, pulmonary function studies, and arterial blood gas studies. The x-rays were predominantly negative concerning the presence of pneumoconiosis, and the other studies showed only a moderate respiratory impairment.

The Administrative Law Judge (ALJ) found that the claimant had worked as a miner for twenty-nine years and that pulmonary function studies produced values sufficient to invoke the interim presumption of disablement described in 20

C.F.R. § 727.203(a)(2). He further found, however, that the presumption had been rebutted by evidence sufficient to satisfy the requirements of § 727.203(b)(3) and (4). [The Appeals Board held that the evidence supported only a § 727.203(b)(4) rebuttal.] The ALJ, in reaching his rebuttal findings, considered all of the evidence but relied heavily on the conflicting medical reports concerning the analysis of the biopsy sample.

Dr. Phillips, after completing the thoracotomy, reported:

> There was a large mass measuring about 4 × 4 cm identified in the subpleural position between fissures separating the lower lobe and the middle lobe. The pleura was incised over this, and about one half of the mass was excised and submitted to the pathologist. He returned this as lymphoid tissue with anthracosis and granuloma. No evidence of malignancy was identified. There were no other masses palpable in the hilar region. The lung was quite anthracotic.

After examining the sample, Dr. Rogers, the pathologist, reported:

> Microscopically there is extensive anthrocotic [sic] pigment disposition throughout the tissue which is largely composed of a granulomatous infiltrate with focal sclerosis and no necrosis. This granulomatous infiltrate is not disposed in classical tubercules, but has ill-defined outer borders where it merges with a dense lymphoid infiltrate. There is no definitely recognizable pulmonary tissue in the specimen. Numerous birefringent, needle-shaped crystals are evidence within theepithelioid [sic] cells as well as in the adjacent more dense deposits of anthrocotic [sic] pigment indicating that the disease process may well be a crystalline pneumoconiosis. Stains for acid fast bacilli and fungi are negative.

FINAL DIAGNOSIS:

> "Biopsy of lung"—granulomatous inflammation with birefringent microcrystals and anthrocosis [sic] suggestive of pneumoconiosis. There is no tumor in this material. Stains for acid fast bacilli and fungi are negative.

Dr. E.A. Hansbarger, testifying by report for the employer, Dean Jones Coal Company, stated:

> 1. I disagree with the Surgical–Pathology Report as rendered by Dr. Lowell W. Rogers on April 13, 1976. The Final Diagnosis by Dr. Rogers is not correct, in my opinion. He makes a diagnosis of Biopsy of Lung, however, no lung is present. The material all appears to be Lymph Node Material. There is a non-caseating granuloma scattered throughout. I am not impressed by the birefringent microcrystals referred to and in particular, there is no evidence of Pneumoconiosis as this is not a bipsy [sic] of lung but a biopsy of Lymph Node;
>
> 2. The material examined appears to me to be Bronchial Lymph Nodes which show a non-caseating granuloma, very highly suggestive of Sarcoid or a Sarcoid-like reaction. Special stains for Fungus and Tuberculosis are negative. A diagnosis of Pneumoconiosis is totally erroneous in this case as no lung tissue is present. I am definitely not impressed by the crystalline material referred to in the Surgical–Pathology Report;
>
> 3. In summary, in all of the material available for study, written and slides, I see no evidence whatsoever for the diagnosis of Coal Workers; [sic] Pneumoconiosis and indeed, no evidence to evenly [sic] remotely suspect this disease.

Dr. D.S. O'Connor, a pathologist also testifying for the employer, Dean Jones Coal Company, concluded that the tissue sections were lymphoid tissue, not lung tissue, and agreed that they contained anthracotic pigments but did not comment on the presence or absence of coal worker's pneumoconiosis in the lung.

The ALJ, in reviewing this medical evidence, stated:

> The biopsy evidence was shown to be unreliable for diagnosing pneumoconiosis because it did not concern lung tissue. These mislabeled slides, together with claimant's understandable belief that he was operated upon for black lung dis-

ease, caused some of the examining physicians to support a clinical diagnosis or a past history of pneumoconiosis.

In adopting this reasoning, the Benefits Review Board stated:

As previously discussed, the record contains a biopsy report prepared by Dr. Rogers which diagnosed anthracosis, suggestive of pneumoconiosis. Director's Exhibit 17. Two Board certified pathologists reviewed Dr. Roger's [sic] report and found that the slides contained lymph rather than lung tissue. These pathologists concluded that Dr. Roger's [sic] diagnosis was erroneous since the data was insufficient to detect lung disease.

The ALJ and the Board thus discredited Dr. Rogers' report and the medical opinions of three other physicians who had supported Daugherty's claim because they had relied in part on the report.

Section 727.202 defines pneumoconiosis as a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments arising out of coal mine employment and specifically includes anthracosis within its definition. *See, e.g., Bueno v. Director, O.W.C.P.*, 7 BLR 1–337, 1–340 (1984). The ALJ seems to recognize and the employer does not seriously dispute that a diagnosis of anthracosis can be the equivalent of a diagnosis of pneumoconiosis. The Board recognized this in *Bueno* where it said:

The Director additionally argues that the autopsy evidence of record is insufficient to support a finding of pneumoconiosis. The autopsy report of July 17, 1978, by Dr. Lowsma, listed "anthracosis" upon microscopic examination of the hilar lymph nodes. Anthracosis is encompassed within the definition of pneumoconiosis at 20 C.F.R. § 727.202. Whether anthracosis of the *hilar lymph nodes* is pneumoconiosis is a finding of fact to be made by the administrative law judge based on the evidence before him.

(Citations omitted.)

As stated, the Board in the case *sub judice* adopted the ALJ's reasoning which discredited Dr. Rogers' pathology report. The difficulty we have with its decision is that it is based in large part on the presumption that Dr. Rogers erroneously reported that he had examined lung tissue. In fact, his report stated, "[T]here is no definitely recognizable pulmonary tissue in the specimen." It indicated that the specimen was composed of "a granulomatous infiltrate merged with a dense lymphoid infiltrate." Similarly, Dr. Phillips, in his post-operative report, stated Dr. Rogers "returned this as a lymphoid tissue with anthracosis and granuloma," indicating also that "[t]he lung was quite anthracotic." In effect, both doctors reported that they had examined material including lymph tissue that exhibited characteristics of anthracosis which, in turn, evidenced pneumoconiosis.

The employer on appeal in this court cites medical testimony presented in hearings conducted preliminarily to the promulgation of Department of Labor rules to the effect that anthracosis consists only of a discoloring pigmentation of the lung and is not an impairment. The regulatory definition of pneumoconiosis, however, is not so restricted. To the contrary, it specifically includes anthracosis as pneumoconiosis. It may well be that the employer can present evidence that the anthracosis present in the area of Daugherty's lungs is merely a pigmentation and cannot, despite the language of the regulations, be a pulmonary anthracosis as indicated in § 727.202. We do not have such evidence for review and express no opinion as to its putative legal effect.

What we consider here is the Board's complete invalidation of Dr. Rogers' pulmonary report because it was not based on examination of lung tissue. This was erroneous as a matter of law. In our reading of Drs. Phillips' and Rogers' reports, they recognized that they were testing lymphoid tissue from the hilar region. By the Board's own decisions, an analysis of such tissue may be sufficient to sustain a determination of the presence or absence of anthracosis. *See Bueno*, 7 BLR at I–340; *Dobrosky v. Director, O.W.C.P.*, 4 BLR 1–680, I–684 (1982). As we held in *King v.*

*Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), "Even if legitimate reasons exist for rejecting or discounting certain evidence, the [Board] cannot do so ... for the wrong reason."

We, therefore, remand this case with directions to give proper consideration to all the evidence. On remand either party may introduce additional medical evidence concerning the existence *vel non* of anthracosis.

REMANDED WITH INSTRUCTIONS.