906 F.2d 264
 PEABODY COAL COMPANY and Old Republic Insurance Company, Petitioners,
v.
Verna L. SHONK (Widow of Lewis Shonk) and Director, Office
of Workers' Compensation Programs, Respondents.
 No. 88-2519.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 19, 1989.
Decided June 29, 1990.
 
 W.C. Blanton, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for petitioners.
 Robert C. Price, Price & Runnels, Bloomington, Ind., for Verna L. Shonk.
 Carla Chapman, Benefits Review Bd., Dept. of Labor, Sylvia T. Kaser, Marta Kusic, Dept. of Labor, Black Lung Div., Washington, D.C., for Office of Workers' Compensation Programs.
 Before CUDAHY, FLAUM and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Peabody Coal Company and Old Republic Insurance Company (collectively, "Peabody") petition this court for review of a final decision of the Department of Labor's Benefits Review Board ("Board"), affirming an award of black lung benefits to the widow of a miner once employed by Peabody. 30 U.S.C. Secs. 901-45; 20 C.F.R. Secs. 727.200-.206. We grant the petition for review and affirm the Board's decision.
 
 
 2
 * BACKGROUND
 
 
 3
 Mr. Shonk (whose widow, Verna L. Shonk, is a respondent in this case) worked in a strip coal mine pit for seventeen years, loading coal onto trucks for shipment. The miner later worked for Peabody for nine years, retiring from his last job as a laborer in the coal mine's garage when he reached the age of sixty-five on March 31, 1977.
 
 
 4
 Mr. Shonk applied for black lung benefits on May 19, 1977. His claim apparently was denied preliminarily on November 28, 1978. Mr. Shonk died on August 19, 1980 from a rupture of an aneurysm in his abdominal aorta. The autopsy report disclosed anthracosis in the miner's lungs.[1] Thereafter, Mrs. Shonk applied for survivor's benefits. A claims examiner informed Peabody on November 12, 1980 that she initially found Peabody liable to pay Mrs. Shonk black lung benefits based on Mr. Shonk's claim. Peabody timely controverted the initial finding.
 
 
 5
 In July of 1981, a deputy commissioner in the Office of Workers' Compensation Programs ("OWCP," the second respondent in this case) determined that Mrs. Shonk was entitled to benefits based on her husband's claim. Peabody timely requested a de novo review by an administrative law judge (ALJ). ALJ Robert L. Hillyard examined the autopsy report and deposition testimony of Dr. Anil Sarkar; Mrs. Shonk's deposition testimony; the deposition of Dr. R. Joe Noble, a cardiologist who had examined Mr. Shonk while he was alive; the deposition testimony of two physicians--Dr. Richard M. Nay, a cardiologist, and Dr. Edwin E. Pontius, a board-certified pathologist--both retained by Peabody; and Mr. Shonk's medical records.
 
 
 6
 ALJ Hillyard invoked the interim presumption of total disability due to pneumoconiosis pursuant to 20 C.F.R. Sec. 727.203(a)(1) on the basis of the autopsy performed by Dr. Sarkar, which revealed anthracosis. The ALJ determined that Peabody had not rebutted the presumption under 20 C.F.R. Sec. 727.203(b)(1)-(4) and therefore awarded Mrs. Shonk benefits. He specifically found that: "[t]o rebut under [20 C.F.R.] Sec. 727.203(b)(2), the Employer must present evidence that the miner either had no respiratory or pulmonary impairment or that the impairment which he did have did not prevent him from performing his usual coal mine work." ALJ Hillyard further stated that rebuttal under 20 C.F.R. Sec. 727.203(b)(3) required that the employer prove "that the total disability of the miner did not, in whole or in part, arise out of coal mine employment." Peabody timely appealed the ALJ's decision to the Board pursuant to 33 U.S.C. Sec. 921(b), specifically alleging that: the ALJ's decision was irrational, contrary to law, and not supported by substantial evidence; the ALJ improperly invoked the interim presumption; and the ALJ erred in finding that Peabody had not rebutted the presumption under 20 C.F.R. Sec. 727.203(b)(2).[2]
 
 
 7
 By the time the Board reviewed the claim, this court had decided Wetherill v. Director, OWCP, 812 F.2d 376 (7th Cir.1987), where, in dicta, the court noted that the Board's previous interpretation of (b)(2) rebuttal "seems contrary to [the regulation's] plain language and therefore erroneous." Id. at 379. The Board followed this reasoning and determined that "the evidence must demonstrate the absence of any impairment" to rebut under (b)(2). The Board affirmed the ALJ's finding that the evidence was equivocal as to total disability and also held that Peabody had waived rebuttal under 20 C.F.R. Sec. 727.203(b)(3).
 
 
 8
 Peabody then requested an en banc hearing before the Board pursuant to 33 U.S.C. Sec. 921(b)(5) on the issue of whether "the Board erred by affirming, as unchallenged on appeal, the [ALJ's] finding that rebuttal [was] not established pursuant to 20 C.F.R. Sec. 727.203(b)(3)." The en banc panel determined that the ALJ had applied the correct legal standard in analyzing rebuttal under paragraph (b)(3); that "no opinion of record concluded that [Mr. Shonk's] disability did not arise out of coal mine employment;" and that Peabody "fail[ed] to allege any error by the [ALJ] in his consideration of the evidence" under paragraph (b)(3). Peabody petitioned this court for review pursuant to 33 U.S.C. Sec. 921(c).
 
 II
 ANALYSIS
 
 9
 Although Peabody seeks review of the Board's decision, "our task is to review the judgment of the ALJ, which was upheld by the Board." Collins v. Old Ben Coal Co., 861 F.2d 481, 486 (7th Cir.1988) (citing Dotson v. Peabody Coal Co., 846 F.2d 1134, 1137 (7th Cir.1988)). Our initial inquiry is whether the ALJ's decision was rational, supported by substantial evidence, and not contrary to law. See 33 U.S.C. Sec. 921(b)(3), as incorporated by 30 U.S.C. Sec. 932(a); Pancake v. Amax Coal Co., 858 F.2d 1250, 1255 (7th Cir.1988) (citing Amax Coal Co. v. Burns, 855 F.2d 499, 501 (7th Cir.1988)). If the ALJ's decision passes muster, then the decision of the Board affirming the ALJ's determination likewise will be affirmed by this court.
 
 A. Invocation of the Interim Presumption
 
 10
 * First, Peabody contends that the ALJ improperly invoked the interim presumption of total disability pursuant to 20 C.F.R. Sec. 727.203(a)(1) based on the autopsy report that revealed anthracosis. Peabody claims that the ALJ incorrectly invoked the presumption because anthracosis is merely black pigment in the lungs and not a disease. The coal company produced testimony of two physicians, Drs. Nay and Pontius, to support the contention that Mr. Shonk's lungs contained black pigment, but were not diseased.[3] Peabody also alleges that the pathologist who performed the autopsy, Dr. Sarkar, "unquestionably" found only black pigmentation, not disease, by autopsy.
 
 
 11
 Peabody argues that "as a matter of law, there is no autopsy evidence of record that Mr. Shonk had pneumoconiosis," and that the ALJ should not have invoked the presumption because, despite what 20 C.F.R. Sec. 727.202 states, anthracosis is not really a disease. It is not for this court to say whether or not anthracosis is a disease. The Department of Labor considered this issue before it promulgated 20 C.F.R. Sec. 727.202. As the Fourth Circuit recently noted in Daugherty v. Dean Jones Coal Co.:
 
 
 12
 The employer on appeal in this court cites medical testimony presented in hearings conducted preliminarily to the promulgation of Department of Labor rules to the effect that anthracosis consists only of a discoloring pigmentation of the lung and is not an impairment. The regulatory definition of pneumoconiosis, however, is not so restricted.
 
 895 F.2d 130, 132 (4th Cir.1989).[4]
 
 13
 The statute broadly defines "pneumoconiosis" as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. Sec. 902(b). The HEW and Labor regulations fleshing out this definition all include anthracosis within the definition of pneumoconiosis. 20 C.F.R. Secs. 410.401(b)(1), 718.201, 727.202;[5] see Daugherty, 895 F.2d at 132 ("Section 727.202 ... specifically includes anthracosis within its definition."); Youghiogheny & Ohio Coal Co. v. Milliken, 866 F.2d 195, 197 (6th Cir.1989) (anthrasocis falls within the definition of pneumoconiosis); Consolidation Coal Co. v. Smith, 837 F.2d 321, 322 n. 2 (8th Cir.1988) (anthracosis is included, though apparently misspelled, in 20 C.F.R. Sec. 727.202); Bueno v. Director, OWCP, 7 BLR 1-337, 1-340 (Ben.Rev.Bd.1984). Section 727.202 does not distinguish between anthracosis, the merely descriptive term, and anthracosis, the diagnosis, and the Board has accepted anthracosis as a finding of pneumoconiosis. Bueno, 7 BLR at 1-340. Quite simply, as a matter of law, anthracosis is pneumoconiosis.
 
 2
 
 14
 Peabody next argues that the interim presumption should not have been invoked because Dr. Sarkar's autopsy and deposition testimony indicate that he used the term only to describe pigmentation in Mr. Shonk's lungs. Peabody attempts to establish that Mr. Shonk only had black pigmentation and no disease in his lungs. The legitimacy of this argument is questionable.[6] Nonetheless, we disagree with Peabody's characterization of Dr. Sarkar's report and deposition. The pathologist included anthracosis in the section of his autopsy report labeled "Final Pathological Diagnosis." A diagnosis is more than a description; it is the identification of a disease or injury. Moreover, in deposing Dr. Sarkar, Peabody's attorney asked the physician three times whether he meant "more than" simply black pigment when he used the term "anthracosis." The physician responded twice by describing a disease process by which anthracotic pigment causes a reaction which in turn causes fibrosis[7] and destruction of the miner's useful lung tissue.[8] Dr. Sarkar opined that the lungs were, indeed, diseased, and that the disease was caused by the miner's exposure to coal dust. The physician observed that the level of lung impairment resulting from anthracosis would depend on "how much of the functioning lung tissue [was] disorganized into anthracosis." These statements illustrate Dr. Sarkar's overall opinion that the lungs were diseased and support the contention that he used the word "anthracosis" as descriptive of disease.
 
 
 15
 Moreover, Peabody's physicians did not dispute Dr. Sarkar's observation that Mr. Shonk's lungs contained brownish/black pigment, or his additional findings of pleural thickening or scarring, bullous emphysema, and fibrosis. Thus, the doctors concurred in the physical finding of anthracosis, and the ALJ did not have opposing opinions to weigh.
 
 
 16
 In sum, the ALJ considered the opinions of three physicians. The Company's doctors urged that anthracosis is not a disease, but disputed only Dr. Sarkar's interpretation of his findings rather than the actual physical findings. Dr. Sarkar performed the autopsy and was the only physician who viewed the lungs in their entirety. He diagnosed the disease anthracosis and believed that the anthracosis in Mr. Shonk's lungs was caused by exposure to coal dust. The ALJ chose to give more weight to the opinion of the physician who performed the autopsy; this was permissible. Simila v. Bethlehem Mines Corp., 7 BLR 1-535, 1-539 (Ben.Rev.Bd.1985). The ALJ also noted, as an additional reason for crediting Dr. Sarkar's opinion, that autopsy evidence is accorded more probative value than x-ray evidence in establishing the existence of pneumoconiosis. See Fetterman v. Director, OWCP, 7 BLR 1-688, 1-691 (Ben.Rev.Bd.1985). The weighing of expert opinions is the province of the ALJ, not this court. Migliorini v. Director, OWCP, 898 F.2d 1292, 1296 (7th Cir.1990); Smith v. Director, OWCP, 843 F.2d 1053, 1057 (7th Cir.1988). We will not disturb the ALJ's credibility determination.
 
 
 17
 Congress intended the Act to cover many different lung diseases. The ALJ's decision that anthracosis is equivalent to pneumoconiosis comports with law, is rational, and is supported by substantial evidence. The ALJ properly invoked the interim presumption under 20 C.F.R. Sec. 727.203(a)(1) based on the pathologist's finding of anthracosis.
 
 B. Failure to Rebut
 
 18
 When the interim presumption is invoked, the miner is considered 1) totally disabled 2) due to pneumoconiosis 3) that arose from his coal mine employment. Generally stated, the three factors presumed are disability, disease, and causation. Once the interim presumption is established under 20 C.F.R. Sec. 727.203(a)(1), as it was here, an employer cannot rebut by showing that the disease was not pneumoconiosis. Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 150, 108 S.Ct. 427, 437, 98 L.Ed.2d 450 (1987) (referring to 20 C.F.R. Sec. 727.203(b)(4) rebuttal). Peabody could only rebut the presumption by proving, pursuant to 20 C.F.R. Sec. 727.203(b)(2) that the miner was not totally disabled or, pursuant to 20 C.F.R. Sec. 727.203(b)(3), that his disability "did not arise in whole or in part" from his coal mine employment.[9] Id. Putting aside any question of waiver on the part of Peabody, we do not believe that either criteria has been met.
 
 
 19
 * In Wetherill v. Director, OWCP, we noted that the proper inquiry under 20 C.F.R. Sec. 727.203(b)(2) seems to be whether any impairment prevented a miner from doing his usual job. 812 F.2d at 379. We determined that paragraph (b)(3), not (b)(2), "enables an employer to rebut the interim presumption by proving that the miner's pneumoconiosis was not a contributing cause of his total disability." Id. at 380. Wetherill provides ample support for the ALJ's finding that the evidence of record did not support Peabody's contention. As the Board noted, because Peabody's retained physicians "found that the miner suffered from respiratory impairments other than pneumoconiosis," their opinions were "insufficient to establish the absence of any impairment" under (b)(2). The Board also affirmed the ALJ's finding that "the remainder of the evidence was equivocal on the issue of total disability pursuant to subsection (b)(2)."
 
 
 20
 Peabody argued, and continues to argue, that arteriosclerotic heart disease alone caused congestive heart failure, which resulted in Mr. Shonk's symptom of extreme dyspnea and his three hospitalizations. The heart disease admittedly was unrelated to Mr. Shonk's coal mine employment. Peabody further contends that, even if Mr. Shonk had some pulmonary disease, such as fibrosis or emphysema (which its doctors conceded), the lung disease itself did not impair him; that is, the disease would not have rendered him totally disabled to do his usual coal mine work.
 
 
 21
 Peabody first points to the fact that Mr. Shonk denied having any respiratory symptoms on his application for black lung benefits, and that, three months after his retirement, Mr. Shonk told Dr. Lenyo that he retired due to his age, not a lung impairment. However, Mr. Shonk did claim to have had a significant sputum-producing cough for four to five years prior to his retirement and shortness of breath upon walking one city block or a flight of stairs, when Dr. Lenyo examined him. Dr. Lenyo diagnosed "chronic bronchitis and mild pulmonary emphysema (sic)" related to coal dust exposure. He also recited Mr. Shonk's "difficulty" lifting and climbing.
 
 
 22
 Peabody emphasizes that Dr. Noble, a cardiologist and the only physician giving deposition testimony who actually examined Mr. Shonk while he was alive (in August 1979), opined that Mr. Shonk's three episodes of severe dyspnea were most probably due to transient congestive heart failure. The physician based this opinion on the results of a stress test and chest x-ray, and the fact that Mr. Shonk seemed to be "relatively asymptomatic" between acute episodes. Dr. Noble testified that he must not have considered Mr. Shonk disabled when he examined Mr. Shonk one year before his death. When he examined Mr. Shonk, Dr. Noble recited that Mr. Shonk could "climb steps and walk reasonable distances without dyspnea nor other cardiopulmonary disability." While the cardiologist admitted that he could not rule out asthmatic bronchitis as a cause of the dyspneic episodes, his professional judgment was that the episodes were cardiac, not pulmonary, in origin.
 
 
 23
 The ALJ discredited Dr. Noble's deposition testimony as rebuttal evidence for two reasons. First, the doctor did not rule out asthmatic bronchitis, and such a diagnosis was made by Dr. Wu, a respiratory specialist, who examined Mr. Shonk just a week before his death. Dr. Wu diagnosed a "chronic obstructive lung disease with an asthmatic component." Crediting medical opinion is the province of the ALJ; he need not accept the conclusions of a physician, but may examine the medical evidence and draw his own inferences. See Migliorini, 898 F.2d at 1297; Smith, 843 F.2d at 1057. In addition, Dr. Noble did not take into account Mr. Shonk's duties as a laborer in the garage at the coal mine when he stated in deposition that he must not have considered Mr. Shonk disabled when he examined him several years before. The Board has held that a doctor's conclusion that a miner is disabled will not support the miner's claim of disability if the doctor failed to consider the miner's duties. See, e.g., Rankin v. Keystone Coal Mining Corp., 8 BLR 1-54, 1-57 (Ben.Rev.Bd.1985) (a doctor's listing of miner's limitations does not support invocation of presumption if doctor fails to compare those limitations to the exertional requirements of the miner's work); Parino v. Old Ben Coal Co., 6 BLR 1-104, 1-107 (Ben.Rev.Bd.1983) (doctor's recitation of one flight dyspnea and one block dyspnea insufficient to constitute total disability). Similarly, a physician's general statement that a miner is not disabled, without addressing the physical requirements of the miner's work, cannot support an employer's rebuttal. See, e.g., Wilson v. Benefits Review Board, 748 F.2d 198, 201 (4th Cir.1984) (a doctor's report "concluding that [the miner] was 'capable of engaging in gainful employment with respect to his lungs' ... [had] little probative value" in making a determination of rebuttal); Boyd v. Freeman United Coal Mining, 6 BLR 1-159, 1-164-1-165 (Ben.Rev.Bd.1983) (a doctor's diagnoses of "mild hypoxemia" and "mild obstruction" does not establish the degree of a miner's impairment and cannot, therefore, provide substantial evidence to rebut).
 
 
 24
 Peabody further argues that the ALJ "required the physician to conduct the analysis" that the ALJ must conduct. That simply is not the case. The ALJ merely determined that the physician's deposition statement did not deserve much weight in light of his failure to consider Mr. Shonk's job, and Peabody's burdens of production and persuasion. Mullins, 484 U.S. at 144 and n. 12, 108 S.Ct. at 432 and n. 12; Zettler v. Director, OWCP, 886 F.2d 831, 835 (7th Cir.1989) (quoting Cooley v. Island Creek Coal Co., 845 F.2d 622, 624 (6th Cir.1988)); Amax Coal Co. v. Director, OWCP, 772 F.2d 304, 305 (7th Cir.1985) (the interim "presumption shifts the burden of persuasion ... not merely ... production"). If Dr. Noble failed to consider the miner's duties when he examined the miner, then the ALJ need not accept as dispositive evidence of rebuttal the physician's later testimony that, at the time he examined Mr. Shonk, he did not consider the miner to be disabled.
 
 
 25
 Peabody also emphasizes the conclusions of its two retained physicians in support of rebuttal. Dr. Nay, the cardiologist retained by Peabody, concurred in Dr. Noble's opinion that cardiac problems caused Mr. Shonk's respiratory symptoms. Dr. Nay's conclusion that Mr. Shonk did not have a pulmonary or respiratory impairment was based on a 1977 pulmonary function study, which was normal; x-rays that did not indicate pulmonary dysfunction or disability; and hospital records and the autopsy, which emphasized Mr. Shonk's heart disease. However, Dr. Nay conceded that Mr. Shonk could have had bronchitis, which he believed was caused by cigarette smoking.[10] The cardiologist testified that Mr. Shonk was not disabled from doing his usual job, which required moderate to relatively heavy labor, on a pulmonary basis.
 
 
 26
 Dr. Pontius, a pathologist, opined that Mr. Shonk did not have pneumoconiosis based on his review of all the evidence, including the autopsy report and slides. Dr. Pontius concluded that Mr. Shonk's dyspnea, and his death, resulted from arteriosclerotic heart disease. He believed that no symptoms or findings indicated that Mr. Shonk was disabled, either prior to his retirement or at the time of his death, due to a pulmonary or respiratory disease. Dr. Pontius opined that any disability suffered by Mr. Shonk before his death was due to his cardiovascular disease. However, the pathologist specifically stated that Mr. Shonk had "no primary pulmonary disease that would have been disabling."
 
 
 27
 The ALJ discredited the depositions of Drs. Nay and Pontius because he had previously credited Dr. Sarkar's autopsy and deposition over them. Since Peabody's physicians rejected the possibility that Mr. Shonk had anthracosis at all, the ALJ distrusted their opinions as to whether the miner's lungs were impaired by any pulmonary or respiratory disease. The ALJ's implicit distrust was not irrational. Dr. Sarkar, on the other hand, was the only physician who viewed Mr. Shonk's lungs. He opined, in deposition testimony, that the diseased portions of the lungs were "useless" for respiration. The physician also concluded that whatever lung impairment Mr. Shonk suffered was a function of the extent to which Mr. Shonk's lungs had been "disorganized into anthracosis," and that he considered such damage "extensive." Further, Dr. Sarkar expected Mr. Shonk's anthracosis to show up on a pulmonary function study, and one PFS in the record did reveal a mild obstructive defect, according to the physician.
 
 
 28
 Accordingly, the ALJ properly concluded that Peabody failed to demonstrate that Mr. Shonk was not totally disabled.
 
 2
 
 29
 Peabody contends in this court that "the issue presented is whether the ALJ erred in concluding that Peabody failed to prove that Mr. Shonk did not at the time of his death have a primary pulmonary or respiratory impairment which was sufficiently severe to preclude him from doing his usual work." (emphasis supplied). Peabody presents this issue under 20 C.F.R. Sec. 727.203(b)(3). Under this subsection, Peabody's argument clearly cannot prevail. The regulation specifically states that rebuttal is possible if "total disability ... did not arise in whole or in part out of coal mine employment." 20 C.F.R. Sec. 727.203(b)(3) (emphasis supplied). This court has held that (b)(3) rebuttal occurs when an employer " 'prov[es] that the miner's pneumoconiosis was not a contributing cause of his total disability.' " Peabody Coal Co. v. Helms, 859 F.2d 486, 489 n. 5 (7th Cir.1988) (quoting Wetherill, 812 F.2d at 380) (emphasis in Peabody ). We did not state that pneumoconiosis need be the primary cause of a miner's disability.
 
 
 30
 The ALJ determined that Peabody failed to rebut because the evidence did not establish "that the total disability of the miner did not, in whole or in part, arise out of coal mine employment." We will not disturb that conclusion.
 
 Conclusion
 
 31
 Accordingly, the award of benefits is affirmed.[11]
 
 
 
 [1]
 "Anthracosis" is defined as "Collier's or miner's lung; melanedema; accumulation of carbon from inhaled smoke or coal dust in the lungs." Stedman's Medical Dictionary 85 (5th ed.1982)
 
 
 [2]
 Peabody did not specifically challenge the ALJ's finding regarding (b)(1) rebuttal (showing that the miner is doing his usual coal mine work or comparable work); (b)(3) rebuttal (showing that total disability or death did not arise in whole or in part from coal mine employment); or (b)(4) rebuttal (proving that the miner did not have pneumoconiosis). Peabody also raised two additional claims not before this court
 
 
 [3]
 We note that Dr. Pontius' and Dr. Nay's opinions that anthracosis is not a disease could not be used under 20 C.F.R. Sec. 727.203(b)(4) to prove that Mr. Shonk did not have pneumoconiosis once the ALJ invoked the presumption under 20 C.F.R. Sec. 727.203(a)(1). Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 150, 108 S.Ct. 427, 437, 98 L.Ed.2d 450 (1987)
 
 
 [4]
 In Daugherty, the Board failed to consider a medical report based on the physician's examination of hilar lymph tissue. Because, "[b]y the Board's own decisions, an analysis of such tissue may be sufficient to sustain a determination ... of anthracosis," the case was remanded "with directions to give proper consideration to all the evidence." 895 F.2d at 132, 133
 
 
 [5]
 Section 727.202 uses the term "anthracosisanthro-silicosis." The Benefits Review Board has stated that the quoted term is a misprint that is actually two words, "anthracosis" and "anthro-silicosis." Husk v. Sewell Coal Co., 4 BLR 1-7, 1-10 (Ben.Rev.Bd.1981)
 
 
 [6]
 "It may well be that the employer can present evidence that the anthracosis present in the area of Daugherty's lungs is merely a pigmentation and cannot, despite the language of the regulations, be a pulmonary anthracosis as indicated in [20 C.F.R.] Sec. 727.202. We do not have such evidence for review and express no opinion as to its putative legal effect." Daugherty, 895 F.2d at 132 (dicta ). We note, however, that the biopsy was of lymph tissue, not lung tissue, in Daugherty
 
 
 [7]
 "Fibrosis" is defined as "the formation of fibrous tissue as a reparative or reactive process, as opposed to the formation of fibrous tissue that is a normal constituent of an organ or tissue." Stedman's Medical Dictionary 529 (5th ed.1982). Dr. Sarkar also diagnosed "pulmonary fibrosis."
 
 
 [8]
 The third time, the physician apparently conceded that "anthracosis" on page four of his report and "black pigmentation" on page two of his report meant the same thing
 
 
 [9]
 Because Mr. Shonk was not working at the time of his death, Peabody could not attack his disability on the basis of 20 C.F.R. Sec. 727.203(b)(1)
 
 
 [10]
 Mr. Shonk had stopped smoking by 1979
 
 
 [11]
 Two months after the case was argued before the court, Peabody moved to dismiss the petition for lack of jurisdiction. Peabody claimed that Mr. Shonk had abandoned his claim pursuant to 20 C.F.R. Sec. 725.410(c), by failing to request a hearing or submit additional evidence within 60 days after his claim had been denied. Therefore, Peabody asserted, the claim was not properly before the deputy commissioner of OWCP, the ALJ, or the Board. Consequently, in Peabody's view, the Board acted outside its jurisdiction in affirming an award of benefits without a proper claim before it. In its motion, Peabody requests that this court vacate the Board's order and remand for an ALJ to consider Mrs. Shonk's claim under the regulations at 20 C.F.R. Secs. 718.201-.206. Mrs. Shonk and the Director respond that the regulations governing the denial of claims by reason of abandonment create only an affirmative defense, a statute of limitations, which is waived when not asserted
 We conclude that, because the deputy commissioner did not violate a statutory mandate or exceed a statutory limitation, the issue of agency jurisdiction, created by Congress, does not arise. The basis on which the claim should have been adjudicated in the agency is waived for failure to present it to the agency.