914 F.2d 260
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
ZEIGLER COAL COMPANY, Petitioner,
v.
Neoma BONER, Widow of Bobbie Boner and Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Respondents.
 No. 88-1494.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 29, 1990.*
Decided Sept. 11, 1990.
 
 Before BAUER, Chief Judge, and MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 This is a petition by the employer, Zeigler Coal Co., to review a decision by the Benefits Review Board affirming an award of black lung benefits to Neoma Boner, the miner's widow. On appeal, we must decide whether the ALJ erred in crediting a treating physician's testimony over the testimony of two non-examining physicians for purposes of invocation and rebuttal of the interim presumption pursuant to 20 C.F.R. Sec. 727.203(a)(4) and 727.203(b), respectively. For the reasons below, we affirm the ALJ's invocation of the presumption that the miner was "totally disabled due to pneumoconiosis" under Sec. 727.203(a)(4). We vacate, however, that portion of the ALJ's award in which he concluded that the employer failed to rebut the presumption under Sec. 727.203(b)(3), and remand the case to the Benefits Review Board for direction to the ALJ to reevaluate all the relevant medical evidence presented in light of Peabody Coal Co. v. Helms, 901 F.2d 571 (7th Cir.1990).
 
 I.
 
 2
 The miner, Bobbie E. Boner, was born on July 14, 1937. Neoma and Bobbie Boner married in 1957. From 1965 until June 1979, Boner worked for Zeigler Coal Co. in Zeigler's underground mines as a shooter and a repairman, but mainly as an electrician. Boner was plagued with medical problems. In 1968, at the age of 30, Boner suffered a heart attack. In 1974, he suffered a massive anterior infarction.[1] No lung disease appeared as part of any diagnosis at that time. In 1977, Boner was admitted to the hospital for the third time with heart problems. During this hospital stay, he also experienced an "increase in dyspnea [shortness of breath] and some coughing and wheezing associated with this." His treating physician, Dr. Moskoff, noted that Boner also suffered from emphysema. On June 18, 1979, Boner was again hospitalized with chest pain, nausea, vomiting and shortness of breath. Dr. Moskoff diagnosed Boner as having "severe cardiomegaly, decompensation and probably low grade myocardial infarction." During his stay, several x-rays and tests were run. The x-rays, read by "B" readers, showed negative results for black lung disease. A board-eligible radiologist, Dr. David Sloan, in reading the x-rays stated, however, that "The lungs show several pulmonary opacities consistent with black lung disease." Boner did not return to work after his heart attack in June 1979.
 
 
 3
 In August of 1979, Dr. Sloan reviewed some additional x-rays. At this time, Sloan noted that Boner suffered from "chronic lung disease with pulmonary arterial hypertension" and Sloan stated that Boner's "heart is failing." Dr. Nordlicht, one of Boner's treating cardiologists, conducted a pulmonary function study on Boner. Evidence from this study indicated that the FEV1 and MVV measurements were in the range and below the values necessary to invoke the presumption of total disability due to pneumoconiosis under 20 C.F.R. Sec. 727.203(a)(2). This test, however, did not meet quality control standards nor did the earlier x-rays viewed by Dr. Sloan. One other physician, Dr. Anantachai, examined Boner in August of 1979, and reviewed Boner's medical history. According to Dr. Anantachai, Boner's family history revealed an increased risk for heart disease, in addition to showing a history of cigarette use, hypertension and obesity. Dr. Anantachai diagnosed Boner in the following manner:
 
 
 4
 Ischemic cardiomyopathy (congestive type cardiomyopathy); ventricular aneurysm cannot be excluded; intractable congestive heart failure.... This heart murmur can also be secondary to increasing congestive heart failure due to dilatation of the left ventricle by itself; chronic obstructive lung disease with probably coal miner's pneumoconiosis.
 
 
 5
 When Dr. Moskoff discharged Boner on September 23, 1979, he wrote that Boner suffered from a "failing heart, probably intractable failure due to ischemic cardiomyopathy ... marked hepatic enlargement due to chronic passive congestion; [and] coal miner's pneumoconiosis with fibrosis and emphysema, developing cor pulmonale."[2]
 
 
 6
 Bobbie Boner died at the age of 42 on November 18, 1979. Dr. Moskoff prepared the death certificate which listed the causes of death as cardiac arrhythmia and hypertensive cardiovascular disease, severe coronary emphysema and pneumoconiosis. In late November, 1979, Boner's widow, Neoma, filed for survivor's benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended. At a hearing before an Administrative Law Judge, Zeigler Coal Co. submitted reports prepared by two medical experts in cardio-pulmonary medicine, Drs. Renn and Tuteur. These experts evaluated the medical evidence available on Bobbie Boner and testified at the hearing. Dr. Renn concluded that Boner died of congestive heart failure and that "there [was] no evidence for coal workers' pneumoconiosis nor were any of his various physical problems either caused by or contributed to by coal workers' pneumoconiosis." Dr. Renn noted, however, that "[t]here [is] a moderate obstructive ventilatory defect as evidenced by the numerical results of his pulmonary function tests; however, there are no tracings which accompany the documents and I cannot attest to the validity of the results." Consistent with Dr. Renn's diagnosis, Dr. Tuteur concluded that "[e]ven if it [black lung disease] were present, its contribution to Mr. Boner's illness and disability would have been trivial and miniscule." Dr. Long, on behalf of the Department of Labor, also reviewed the medical evidence. Based on the pulmonary function study, Dr. Long reported that Boner's "FEV1 did show some obstructive impairment in that it was only 60% of FEV1" and concluded that "we can assume that this man did have some degree of cwp [coal workers' pneumoconiosis] and that this vent study is valid."
 
 
 7
 After reviewing the evidence, the ALJ issued his decision and order. Although the ALJ found no evidence supported invocation of the interim presumption under 20 C.F.R. Sec. 727.203(a)(1) through (a)(3), the ALJ determined that a preponderance of evidence supported the conclusion that Boner was "totally disabled due to pneumoconiosis" prior to and at the time of his death, thereby triggering invocation of the interim presumption under the "other medical evidence" standard in Sec. 727.203(a)(4). In reaching this conclusion, the ALJ assessed the medical evidence in support of Sec. 727.203(a)(4), finding that Dr. Moskoff's opinion, as Boner's treating physician, was "well reasoned and based on objective medical evidence, namely pulmonary function study, x-ray and physical findings." In addition, the ALJ cited to the medical reports of Drs. Long, Anantachai and Nordlicht as supportive of Dr. Moskoff's diagnosis. The ALJ then "discounted" the testimony of Drs. Renn and Tuteur since their reports were "based solely upon a review of medical records in contrast to the opinion of Mr. Boner's treating physician."
 
 
 8
 Finding that the presumption of total disability was invoked under Sec. 727.203(a)(4), the ALJ next discussed whether Zeigler Coal presented evidence adequate to rebut the presumption of total disability under Sec. 727.203(b). The ALJ first determined that Zeigler Coal failed to present evidence which rebutted the presumption under Sec. 727.203(b)(1) or (b)(2). Turning to the evidence presented for rebuttal under Sec. 727.203(b)(3), the ALJ again noted that pneumoconiosis was listed by Dr. Moskoff as a cause of Boner's death. The ALJ then explicitly stated that he "again discount[ed] ... the[ ] reviewing doctors' opinions since they did not have the benefit of actually examining and treating the miner." In addition, he wrote that "I have considered these opinions but give greater weight to the contrary opinion of Dr. Moskoff, the treating physician." Finally, the ALJ found the evidence insufficient to rebut the presumption of total disability under Sec. 727.203(b)(4). The ALJ concluded that none of the employer's evidence "disprove[d] the existence of pneumoconiosis" and held that Neoma Boner was entitled to black lung benefits.
 
 
 9
 Zeigler Coal Co. appealed the decision to the Benefits Review Board, which affirmed the ALJ's decision, using the same rationale. Zeigler now appeals to this court.
 
 II.
 
 10
 In this case, there is no disagreement that the miner, Bobbie Boner, suffered from severe medical disabilities for most of his adult life, worked in coal mines most of that life and died at an early age. Our analysis, however, focuses on whether the medical evidence in this case is sufficient to invoke the interim presumption that Boner was totally disabled due to pneumoconiosis, and whether any relevant evidence rebuts that presumption. We review the ALJ's decision to insure that it is supported by substantial evidence, is consistent with the law, and is rational. See 33 U.S.C. Sec. 921(b)(3), as incorporated by 30 U.S.C. Sec. 932(a); Smith v. Director, OWCP, 843 F.2d 1053, 1056-57 (7th Cir.1988). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith, 843 F.2d at 1057 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).
 
 
 11
 Generally speaking, a claimant is entitled to black lung benefits if it is established that the miner was 1) totally disabled; 2) due to pneumoconiosis; 3) which was caused by exposure to coal dust. Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 141 (1987); see also Peabody Coal Co. v. Shonk, 906 F.2d 264, 271-72 (7th Cir.1990). Under 20 C.F.R. Sec. 727.203,[3] a miner who has engaged in coal mine employment for ten or more years will be presumed to be totally disabled due to pneumoconiosis if one of four medical requirements is met.[4] Specifically, medical opinions may establish a "totally disabling respiratory or pulmonary impairment" under 20 C.F.R. Sec. 727.203(a)(4) which is sufficient to invoke the interim presumption.
 
 
 12
 In this case, the ALJ considered both the testimony and report by Dr. Moskoff, the treating physician. In addition, the ALJ reviewed the reports of the five other doctors who either treated Boner or reviewed his medical records. Dr. Moskoff's diagnosis that Boner was totally disabled due to a respiratory or pulmonary impairment was supported by three other doctors' reports, reports from Dr. Long, Dr. Nordlicht, and Dr. Anantachai. This diagnosis was also buttressed by a pulmonary function study, an X-ray, and physical findings. Zeigler does not contest this corroborative evidence; rather, it argues that the ALJ credited Dr. Moskoff's report for an impermissible reason, i.e., that he credited Moskoff's report because he was the treating physician.
 
 
 13
 This court recently held, in the context of reviewing expert and treating physicians' opinions in a black lung case, that "[a] blanket rule that the opinion of the treating physician is entitled to greater weight than that of a consulting physician is arbitrary." Helms, 901 F.2d at 573. We conclude that for the purposes of invoking the interim presumption, the ALJ did not arbitrarily discount the non-examining physicians' testimony solely because Dr. Renn and Dr. Tuteur did not examine Boner. Looking at the ALJ's discussion of Sec. 727.203(a)(4) as a whole, we note that the ALJ discounted, after review, Dr. Renn's and Dr. Tuteur's opinions in light of the corroborative findings of three other doctors, in addition to the opinion and findings of Dr. Moskoff. This type of balancing of the relevant findings and evidence is what is intended under the invocation provisions. We note that this "weighing" is traditionally within the province and discretion of the ALJ, and we will not disturb it lightly. Shonk, 906 F.2d at 271 (citing Migliorini v. Director, OWCP, 898 F.2d 1292, 1296 (7th Cir.1990); Smith, 843 F.2d at 1057). Again, we conclude that the ALJ's judgment finding that the claimant established entitlement to invoke the interim presumption is supported by substantial evidence.
 
 
 14
 For purposes of rebuttal of the interim presumption, 20 C.F.R. Sec. 727.203(b) provides in part:
 
 
 15
 In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) ... shall be rebutted if:
 
 
 16
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment;....
 
 
 17
 Sec. 727.203(b)(3) (emphasis added). Under this provision, all evidence, including that submitted to contest invocation, must be considered. See Mullins Coal Co., 484 U.S. at 150 & n. 26 (employer may attempt to disprove total disability, pneumoconiosis or causality where invocation occurs under Sec. 727.203(a)(4)).
 
 
 18
 Zeigler again contends that the ALJ impermissibly discounted its experts' testimony in favor of the treating physician's opinion in assessing the rebuttal evidence. In this respect, we note that the ALJ referred back to his reasoning for invoking the presumption when he discussed the rebuttal provisions of Sec. 727.203(b). It does not necessarily follow that the same reasoning supports a finding that Zeigler failed to rebut the presumption since under Sec. 727.203(a)(4), the ALJ is determining disability, whereas under Sec. 727.203(b)(3), the ALJ is assessing causation. See Mullins Coal Co., 484 U.S. at 141. In reviewing the rebuttal evidence, the ALJ stated only that he "again discounted" the non-reviewing physicians' testimony because the doctors did not examine Boner. Looking to the ALJ's discussion of rebuttal evidence, it is difficult to determine whether he discounted Dr. Renn's and Dr. Tuteur's testimony for rebuttal because they did not treat or examine Boner, as the language indicates, or whether the ALJ also considered other evidence corroborative of causation, thereby supporting his decision to discount the experts' opinions. Although the latter is permissible under Helms, the former is not.
 
 
 19
 An ALJ is entitled to weigh expert testimony as the evidence dictates. See Shonk, 906 F.2d at 271, 273. Nevertheless, we believe that the ALJ's statements that he "considered" but discounted the experts' testimony "since they did not have the benefit of actually examining and treating the miner," is tantamount to a "blanket" exclusion of the evidence which this court condemned in Helms, 901 F.2d at 573. Our decision in Helms, therefore, requires us to remand this case to the Benefits Review Board for direction to the ALJ to reevaluate all relevant medical evidence under Sec. 727.203(b)(3) of the rebuttal provisions.
 
 
 20
 AFFIRMED IN PART.
 
 
 21
 VACATED AND REMANDED IN PART.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." Both parties have filed such a statement and requested oral argument. Upon consideration of those statements, the briefs, and the record, the requests for oral argument are denied and the appeal is submitted on the briefs and record
 
 
 [1]
 An anterior infarction is a frontward "obstruction" of circulation by a thrombosis or embulus. See Webster's Medical Desk Dictionary 334 (5th ed.1986). This is more generically referred to as a heart attack
 
 
 [2]
 Cor pulmonale is defined as "disease of the heart" on the right side which is secondary to lung disease. Webster's Medical Desk Dictionary 145 (5th ed.1986)
 
 
 [3]
 This provision applies to Neoma Boner's petition due to her filing date in November 1979. See 20 C.F.R. Sec. 200
 
 
 [4]
 Under 20 C.F.R. Sec. 727.203(a), the medical requirements necessary to invoke the presumption include:
 (1) A chest roentgenogram (X-ray) ...;
 (2) Ventilatory studies ...;
 (3) Blood gas studies ...;
 (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment;
 (5) In the case of a deceased miner ... the affidavit of the survivor of such miner....