972 F.2d 178
 PEABODY COAL COMPANY and Old Republic Insurance Company, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor, and Laura Railey, Respondents.
 No. 91-2431.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 26, 1992.
Decided Aug. 27, 1992.
Rehearing and Rehearing In Banc
Denied Nov. 9, 1992.
 
 Mark E. Solomons (argued), Laura M. Klaus, Washington, D.C., for petitioners.
 Brian E. Peters, Dept. of Labor, Appellate Litigation, Michael J. Denney, Dept. of Labor, Office of Sol., Louis W. Rogers, Dept. of Labor, Office of Workers' Compensation Program, Washington, D.C., for respondent Office of Workers' Compensation Program.
 Harold B. Culley, Jr. (argued), Raleigh, Ill. (argued), for respondent Laura Railey.
 Linda M. Meekins, Ann McLaughlin, Benefits Review Bd., Dept. of Labor, Washington, D.C., for respondent Benefits Review Bd.
 Before BAUER, Chief Judge, COFFEY, Circuit Judge, and HARLINGTON WOOD, Jr., Senior Circuit Judge.
 HARLINGTON WOOD, Jr., Senior Circuit Judge.
 
 
 1
 Peabody Coal Company and its insurer request review of a decision of the Benefits Review Board, United States Department of Labor, affirming the decision of an administrative law judge to award Laura Railey, the widow of William Railey, a coal miner, benefits commencing October 1988. Because we think the administrative law judge's decision lacks the requisite specificity regarding the weight of the medical evidence, we vacate the decisions below and remand for further consideration.
 
 Background Facts
 
 2
 William Railey was a coal mine worker for more than thirty-nine years. Over the thirty-nine years Mr. Railey worked predominately in underground mines, spending only a brief period of four years working on a surface mine. Immediately before he retired from coal mine working, Mr. Railey was with Peabody Coal Company ("Peabody"). Mr. Railey also smoked cigarettes for most of the time he was a coal worker; he quit smoking about five years before he retired. Mr. Railey quit coal working in July 1985 when he was sixty-two years old. Prior to his retirement in 1980 Mr. Railey began complaining of breathing problems. These problems became progressively worse. His breathing problems made it difficult for him to get his work done, and he sometimes needed help from his coworkers.
 
 
 3
 On September 30, 1985, Mr. Railey filed a claim under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945. Mr. Railey was diagnosed with inoperable, terminal bronchogenic carcinoma with widespread metastasis in August 1986, and he died two months later before his claim under the Black Lung Benefits Act could be adjudicated. Mr. Railey's death certificate lists carcinoma of the lung and generalized metastasis as the immediate cause of death.
 
 
 4
 Laura Railey, Mr. Railey's widow, filed a surviving spouse's claim under the Black Lung Benefits Act on October 31, 1986. Her claim was consolidated with Mr. Railey's claim and remanded to the Department of Labor ("DOL") for further consideration of Mrs. Railey's claim. Mrs. Railey was awarded survivor's benefits; Peabody denied liability, and the case was sent to the Office of Administrative Law Judges for a hearing. After a hearing the administrative law judge ("ALJ") denied benefits in Mr. Railey's case and awarded benefits to Laura Railey. Peabody then appealed to the Benefits Review Board, and the Board affirmed the ALJ's award of survivor's benefits to Mrs. Railey.
 
 
 5
 In deciding to award benefits to Mrs. Railey the ALJ considered the following medical reports and conclusions:
 
 
 6
 On October 9, 1986, Mr. Railey's body was examined by Dr. Warren R. Dammers. Dr. Dammers's qualifications are not included in the record. Dr. Dammers concluded on the basis of his gross examination (an examination without the aid of a microscope) and Mr. Railey's clinical history that Mr. Railey's death was due to cardio-pulmonary failure related to pulmonary malignancy and associated pneumonitis. Dr. Dammers also concluded that Mr. Railey's right lung showed moderate anthracosis at only one area while the left lung was mildly anthracotic with some areas of consolidation in dependent areas. Dr. Dammers prepared slides of Mr. Railey's lungs and referred them to Dr. Victor Aydt for his review. In a tissue report dated October 23, 1986, Dr. Aydt noted anthracotic deposits with focal fibrosis in the slides of Mr. Railey's lungs, and he concluded these deposits represented coal worker's pneumoconiosis. However, Dr. Aydt also stated in his report that an extensive tumor in Mr. Railey's lung hampered his interpretation.
 
 
 7
 Dr. Edmond Crouch also reviewed the slides of Mr. Railey's lungs that Dr. Dammers prepared. He noted in his March 5, 1987, consultation report that the sections contained granular, black pigment. Although his diagnosis lists anthracosis, he commented in his report that Mr. Railey's lungs exhibited no histologically discernible coal worker's pneumoconiosis. Dr. Anna Louise Katzenstein also reviewed the lung slides. Her report is dated September 16, 1987. She concluded that two of the sections exhibited anthracotic pigment, but it was nonspecific indicating only dust exposure but not functionally significant pneumoconiosis.
 
 
 8
 Dr. Peter G. Tuteur prepared an independent medical review dated June 30, 1987, based on information from Peabody's trial counsel. After reviewing Dr. Dammers's and Dr. Aydt's autopsy reports, x-rays, and various other medical records, Dr. Tuteur concluded that Mr. Railey died from carcinoma of the lung, which he stated is not related to or aggravated by the inhalation of coal dust.
 
 
 9
 Dr. Grover Sloan, who was Mr. Railey's treating physician, submitted a November 23, 1987, letter containing his opinion that pneumoconiosis was significantly responsible for the malignant lung disease which caused Mr. Railey's death.
 
 
 10
 Finally Dr. Mina Gabrawy examined the slides of Mr. Railey's lungs. Dr. Gabrawy also reviewed the pathological report prepared by Drs. Dammers and Aydt and Dr. Sloan's report. Dr. Gabrawy opined in a December 3, 1987, report that Mr. Railey's demise was equally attributed to coal miner's pneumoconiosis and pulmonary malignancy and infarction.
 
 Analysis
 
 11
 Peabody and its insurer, Old Republic Insurance Company (hereinafter collectively referred to as "Peabody") appeal the ALJ's award of survivor's benefits to Laura Railey. Specifically, Peabody challenges the ALJ's finding that Mr. Railey had pneumoconiosis and that the disease substantially contributed to his death. While we do not accept Peabody's argument that the ALJ's conclusion was incorrect as a matter of law, we are persuaded by its argument and the argument of the Director, Office of Workers' Compensation Programs, United States Department of Labor ("Director") that the ALJ's order does not clearly set forth the reasoning supporting an award of survivor's benefits to Laura Railey in light of the conflicting evidence. We therefore think that remand is necessary in this case.
 
 
 12
 We will first address the ALJ's finding that Mr. Railey suffered from the pneumoconiosis disease, and we will next address an issue related to whether the evidence of record is sufficient to establish that pneumoconiosis substantially contributed to Mr. Railey's death. Although Peabody seeks review of the decision of the Benefits Review Board, our task is to determine whether the findings of the ALJ are rational, supported by substantial evidence and in accordance with law. Peabody Coal Co. v. Shonk, 906 F.2d 264, 267 (7th Cir.1990).
 
 
 13
 Mrs. Railey is entitled to benefits under the Black Lung Benefits Act as Mr. Railey's survivor if she shows that Mr. Railey's death was due to pneumoconiosis. 30 U.S.C. § 901(a). Department of Labor regulations at 20 C.F.R. § 718.205(c), governing claims filed after January 1, 1982, further provide in pertinent part:
 
 
 14
 death will be considered to be due to pneumoconiosis if any of the following criteria is met:
 
 
 15
 (1) Where competent medical evidence established that the miner's death was due to pneumoconiosis, or
 
 
 16
 (2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis, or
 
 
 17
 (3) Where the presumption [arising from medical evidence of complicated pneumoconiosis] set forth at 718.304 is applicable.
 
 
 18
 (4) However, survivors are not eligible for benefits where the miner's death was caused by traumatic injury or a principal cause of death was a medical condition not related to pneumoconiosis, unless pneumoconiosis was a substantially contributing cause of death.
 
 
 19
 In this case Mrs. Railey has the burden of establishing that pneumoconiosis was a substantially contributing cause of Mr. Railey's death. The ALJ found that pneumoconiosis was a substantially contributing cause or factor in Mr. Railey's death due to lung cancer. Peabody argues that the ALJ's conclusion is based almost entirely on evidence that is not in the record and therefore must be reversed. While we agree with Peabody that the ALJ's decision should be reversed and remanded for further fact-finding, we do not accept Peabody's argument that it has defeated Mrs. Railey's claim as a matter of law because she has allegedly failed to introduce sufficient evidence that her husband's death was caused by pneumoconiosis.
 
 
 20
 The ALJ first determined that Mr. Railey had the pneumoconiosis disease by evaluating the criteria set out in 20 C.F.R. § 781.201(a)(1) through (a)(4) (Determining the existence of pneumoconiosis). The ALJ determined that the x-ray evidence in the record failed to establish that Mr. Railey had pneumoconiosis, so the judge looked to the autopsy report, which may if conducted in compliance with 20 C.F.R. § 718.106, provide a basis for a finding of pneumoconiosis. See 20 C.F.R. § 718.202(a)(2). The ALJ relied on the opinions of Dr. Dammers, the physician who conducted the gross post-mortem examination, and Dr. Aydt, the physician who reviewed the microscopic slides prepared by Dr. Dammers, to support his conclusion that Mr. Railey suffered from pneumoconiosis. The ALJ stated that Drs. Dammers and Aydt performed the autopsy on Mr. Railey, and their opinions were therefore more convincing than the opinions of Drs. Crouch, Katzenstein and Tuteur because Drs. Crouch and Katzenstein only reviewed the autopsy report and the slides and Dr. Tuteur reviewed only Drs. Crouch and Katzenstein's comments and did not even review the slides. Drs. Crouch, Katzenstein and Tuteur all concluded that Mr. Railey did not suffer from pneumoconiosis.
 
 
 21
 The ALJ declined to emphasize the latter doctors' opinions because those doctors did not actually view Mr. Railey's lung tissue. The ALJ cited United States Steel Corporation v. Oravetz, 686 F.2d 197, 200 (3d Cir.1982), where the court stated it is not unreasonable to give more weight to the testimony of the physician who performed the autopsy over the physician who reinterprets an autopsy based on slides. One problem with the ALJ's conclusion is that there is no evidence in the record indicating that Dr. Aydt actually performed the autopsy. At most there is only evidence that he, like Drs. Crouch, Katzenstein and Tuteur simply reviewed slides prepared by Dr. Dammers.
 
 
 22
 Our decision in Peabody Coal Company v. Shonk, 906 F.2d 264, 269 (7th Cir.1990), seems to support what the ALJ did in this case. In Shonk we said it is permissible for an administrative law judge to give more weight to the opinion of the physician who performed the autopsy diagnosing a miner with anthracosis over the opinions of other doctors who did not actually view the miner's lungs in their entirety. We additionally pointed out in Shonk that "the weighing of expert opinions is the province of the ALJ, not this court." Id. However, in a decision prior to Shonk, Peabody Coal Company v. Helms, 901 F.2d 571, 573 (7th Cir.1990), we said that a blanket rule adopted by an administrative law judge that the opinion of the treating physician is entitled to greater weight than that of a consulting physician is arbitrary. Peabody argues that the ALJ in this case adopted an impermissible blanket rule, preferring the opinion of the autopsy physician over the opinions of physicians who only reviewed slides. Peabody claims Helms and Shonk are not easily reconcilable. We disagree.
 
 
 23
 The point made in Helms was that it is irrational to prefer the opinion of the treating physician, who is often not a specialist, over the opinion of a nontreating specialist solely because one physician is the treating physician. A specialist consulted by the DOL in a black lung case obviously will have particularized knowledge of pulmonary disease. The same cannot always be said of a nonspecialist treating physician. In this case the issue is, as it was in Shonk, preferring the physician who performs the autopsy over the physician who only reviews the slides. The physician who conducts an autopsy is specially trained to analyze and diagnose disease after conducting a post-mortem examination. The autopsy physician is therefore much more analogous to the specialist in pulmonary disease referred to in Helms than the nonspecialist treating physician. In Shonk we said that it was permissible for the ALJ to prefer the testimony of the autopsy physician over the opinions of those physicians who did not view the miner's lung in its entirety. However, we did not condone such a preference as a blanket rule. In fact, the Shonk court also noted that the ALJ had an additional reason for crediting the autopsy physician's opinion--that autopsy evidence is accorded more probative value than x-ray evidence in establishing the existence of pneumoconiosis. Shonk, 906 F.2d at 269. We do not think the ALJ in the Shonk case preferred the opinion of the autopsy physician over the opinions of the other physicians as a blanket rule; neither do we think that this court on appeal condoned such a rule. Therefore, the cases are not inconsistent.
 
 
 24
 Here the ALJ seemed to accord more weight to the opinions of Drs. Dammers and Aydt because the ALJ believed these physicians performed the autopsy. The ALJ seemed to choose these opinions by following a blanket rule, and he gives no rational reason for his preference. Also, there is no indication in the ALJ's decision that he determined whether the reports of Drs. Dammers and Aydt met the quality standards located in 20 C.F.R. § 718.106(a) for autopsy reports. This regulation specifies that the autopsy report should contain a detailed gross and microscopic description or visualized portion of the lungs, a copy of the surgical note and the pathology report of the gross and microscopic examination of the surgical specimen if surgery was performed. We additionally note that there is no evidence in the record of Dr. Dammers's qualifications, nor is there any evidence that Dr. Aydt actually performed the autopsy. It seems to us that Dr. Aydt did exactly what the physicians consulted by Peabody, Drs. Katzenstein and Tuteur, did--reviewed the slides of Mr. Railey's lungs prepared by Dr. Dammers. Therefore, the ALJ has indicated no rational basis for preferring Dr. Aydt's opinion over the opinions of Drs. Katzenstein and Tuteur.
 
 
 25
 Although we still adhere to our statement in Shonk that the "weighing of expert opinions is the province of the ALJ," there must be some indication in the ALJ's decision that the weighing was conducted in a reasoned manner. There is no indication in the record that the ALJ's decision regarding whether Mr. Railey had pneumoconiosis was made in a reasoned manner, especially when, as in this case, the record contains conflicting probative evidence. See Wensel v. Director, Office of Workers' Compensation Programs, United States Department of Labor, 888 F.2d 14, 16 (3d Cir.1989). As the Director points out in his brief, the ALJ failed to indicate with the requisite specificity regarding which physician conducted the autopsy report. The ALJ also failed to note the comparative qualifications of Drs. Dammers and Aydt. These two factors should substantially affect the ALJ's weighing process on remand.
 
 
 26
 Since this case is to be remanded to the ALJ for reweighing of the facts underlying the finding that Mr. Railey had pneumoconiosis, we feel it necessary to comment on Peabody's argument concerning a diagnosis of anthracosis and whether such a diagnosis may constitute a finding of pneumoconiosis. The pertinent regulation, 20 C.F.R. § 781.201, reads: "For purposes of the Act, 'pneumoconiosis' means chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, ... anthracosis...." Despite that the regulation clearly indicates that a diagnosis of anthracosis constitutes pneumoconiosis for purposes of the Act, Peabody basically asks us to read the term out of the regulation because the National Institute for Occupational Safety and Health ("NIOSH," the statutory medical consultant to DOL) and a team from the American College of Pathology urged DOL in public proceedings to leave the term out of the regulation. We will not adopt Peabody's interpretation, which alters the plain meaning of the regulation. In Shonk this court specifically held that a diagnosis of anthracosis is pneumoconiosis for purposes of 20 C.F.R. § 727.202 which states, like 20 C.F.R. § 718.201, that anthracosis constitutes pneumoconiosis for purposes of the Act. And in Shonk this court stated, "Quite simply, as a matter of law, anthracosis is pneumoconiosis." 906 F.2d at 268. We think Shonk applies here and that it makes no difference that the relevant regulation in this case is Section 718.201 rather than Section 727.202, which was the relevant regulation in Shonk--both regulations include anthracosis, as well as a number of different lung diseases, within the definition of pneumoconiosis.
 
 
 27
 We now address the ALJ's finding that pneumoconiosis substantially contributed to Mr. Railey's death. This finding was necessary under 20 C.F.R. § 718.205(c)(2) before the judge could award benefits to Mrs. Railey. As we think it necessary to remand for a reweighing of the evidence concerning the existence of pneumoconiosis in this case, we will comment upon whether we should remand this case with instructions requiring the ALJ to award benefits if pneumoconiosis hastened Mr. Railey's death even if only briefly. This standard was announced in Lukosevicz v. Director, Office of Workers' Compensation Programs, United States Department of Labor, 888 F.2d 1001 (3d Cir.1989). In Lukosevicz, the court in a well-reasoned opinion deferred to the Director's interpretation of "his own concededly valid regulation" where neither congressional intent nor the statute clearly provided an answer. 888 F.2d at 1005. The Director stated that the words "substantially contributing cause or factor leading to the miner's death" in 20 C.F.R. § 718.205(c)(2) mean anything that has " 'an actual or real share in producing an effect' and that any condition which hastens death fits this description." 888 F.2d at 1004. We note that the Fourth Circuit has also adopted the Director's interpretation of 20 C.F.R. § 718.205(c)(2). See Jewell Shuff v. Cedar Coal Company and Director, Office of Workers' Compensation Programs, United States Department of Labor, 967 F.2d 977 (4th Cir.1992). The Director urges us to adopt the Lukosevicz standard in this case. We think that if the ALJ should find, after reweighing the evidence in this record in accordance with this opinion, that Mr. Railey had pneumoconiosis the judge should then apply the interpretation of 20 C.F.R. § 718.205(c)(2) advanced by the Director here and found in the Lukosevicz case.
 
 
 28
 Peabody strenuously argues against our decision here, but we think, like the court in Jewell Shuff, that the Director's interpretation provides a workable standard for evaluating the causal element between a miner's death and whether that death can be considered due to pneumoconiosis. See Jewell Shuff, 967 F.2d at 979-980. We have said that courts should generally defer to the interpretation of a regulation by the agency or officer charged with its administration. See Peabody Coal Co. v. Blankenship, 773 F.2d 173, 175 (7th Cir.1985). In Blankenship we also stated, "the Director's interpretation ... is controlling 'unless it is plainly erroneous or inconsistent with the regulation.' " Id. (citing Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (quoting Bowles v. Seminole Rock Co., 325 U.S. 410, 413, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945))).
 
 Conclusion
 
 29
 We vacate the decisions of the Benefits Review Board and the administrative law judge and remand for further consideration in accordance with this opinion.
 
 
 30
 VACATED AND REMANDED.