69 F.3d 532
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CONSOLIDATION COAL COMPANY, Petitioner,
v.
Barbara FREME, Survivor of Anthony F. Freme, Deceased;
Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Respondents.
 No. 95-1118.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 25, 1995.
Decided Oct. 31, 1995.
 
 On Petition for Review of an Order of the Benefits Review Board. (BRB No. 93-2145-BLA)
 ARGUED: William Steele Mattingly, JACKSON & KELLY, Morgantown, West Virginia, for Petitioner. Gregory C. Hook, Waynesburg, Pennsylvania, for Respondents. ON BRIEF: Kathy L. Snyder, JACKSON & KELLY, Morgantown, West Virginia, for Petitioner.
 Ben.Rev.Bd.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and MURNAGHAN and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Consolidation Coal Co. ("Consolidation") petitions for review of a decision by the Benefits Review Board ("the Board") affirming the award of benefits under the Black Lung Benefits Act (BLBA), 30 U.S.C. Sec. 932(a), to Barbara Freme, surviving widow of Anthony Freme. Finding the decision to be supported by substantial evidence, we affirm.
 
 
 2
 * Anthony Freme died on January 3, 1991, at the age of 69. He had been a coal miner for at least 40 years. His widow, Barbara Freme, applied for benefits under the BLBA. An Administrative Law Judge (ALJ) held a formal hearing on her claim.
 
 
 3
 Each side presented the views of physicians who had evaluated the cause of death. The physicians disagreed both as to the presence of pneumoconiosis and to its effect. Dr. J.M. Shelley performed the autopsy and found "scattered pigmented fibrotic foci" that were "suggestive of mild coal miner's pneumoconiosis." On behalf of the Department of Labor, Dr. Dominic Gaziano found the presence of "mild" pneumoconiosis, but he did not believe it was a substantially contributing cause of death. For Freme, Dr. Sidney Goldblatt found the presence of pneumoconiosis, which he concluded was a "primary cause of death." On behalf of Consolidation, several doctors concluded pneumoconiosis was not present.
 
 
 4
 The ALJ gave Dr. Goldblatt's opinion the most weight after finding that he had the highest credentials of any of the physicians. Dr. Goldblatt reviewed the autopsy slides, autopsy protocol, medical records, and another doctor's report. On the basis of his report and deposition, as supported by the findings of two other physicians, the ALJ found that pneumoconiosis was present, 20 C.F.R. Sec. 718.202(a)(4) (1995), and that Freme's death was due to that condition, id. Sec. 718.205(c). The ALJ therefore awarded benefits. The Board affirmed, with one judge concurring.
 
 II
 
 5
 Consolidation first argues that the ALJ and the Board applied the wrong legal standard to determine whether pneumoconiosis was a cause of Freme's death. The Department of Labor regulations provide:
 
 
 6
 (c) For the purpose of adjudicating survivors' claims filed on or after January 1, 1982, death will be considered to be due to pneumoconiosis if any of the following criteria is met:
 
 
 7
 ...
 
 
 8
 (2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis....
 
 
 9
 20 C.F.R. Sec. 718.205(c)(2) (1995) (emphasis supplied). The Director of the Office of Workers' Compensation Programs, who promulgated the regulation, has determined that any condition that "serves to hasten death in any way" is a "substantially contributing cause or factor." This circuit, joining three others, has accepted that interpretation. Shuff v. Cedar Coal Co., 967 F.2d 977, 980 (4th Cir.1992), cert. denied, 113 S.Ct. 969 (1993); accord Brown v. Rock Creek Mining Co., 996 F.2d 812, 816 (6th Cir.1993); Peabody Coal Co. v. Director, Office of Workers' Compensation Programs, 972 F.2d 178, 183 (7th Cir.1992); Lukosevicz v. Director, Office of Workers' Compensation Programs, 888 F.2d 1001, 1006 (3d Cir.1989). The ALJ in this case followed the Director's interpretation.
 
 
 10
 Consolidation argues, however, that it was improper for this Court in Shuff to defer to the views of the Director, because deference is appropriate only when statutory provisions are ambiguous, while these provisions are not ambiguous. See Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837 (1984); see also Brown, 996 F.2d at 817 (Batchelder, J., dissenting) (making this argument). Consolidation is incorrect. Chevron does not apply because the Director has advanced an interpretation of a regulation that OWCP itself promulgated, not a Congressional statute. When an agency advances an interpretation of its own regulation, that interpretation "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " Stinson v. United States, 113 S.Ct. 1913, 1919 (1993) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). Agency interpretations of even unambiguous regulations are binding, so long as they are not actually inconsistent with the regulations. Stinson, 113 S.Ct. at 1918. The Director's interpretation is not plainly erroneous or inconsistent with the regulation. Accordingly, it was proper to follow it.
 
 III
 
 11
 Consolidation also argues that the ALJ either did not base his conclusion on substantial evidence, or failed to consider all the evidence presented, as required by 30 U.S.C. Sec. 923(b). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). We find that the ALJ based his conclusions on substantial evidence. Toler v. Eastern Associated Coal Co., 43 F.3d 109, 114 (4th Cir.1995).
 
 
 12
 Consolidation criticizes the ALJ's decision that Dr. Goldblatt was the most qualified physician. As the concurring Board judge pointed out, Drs. Kleinerman and Naeye are also highly qualified pathologists. They were members of the committee that established the Pathology Standards for Coal Workers' Pneumoconiosis on behalf of the College of American Pathologists. According to Consolidation, while Drs. Kleinerman and Naeye have published numerous papers on the effects of coal dust, Dr. Goldblatt has never published a single paper on pulmonary pathology or pneumoconiosis.
 
 
 13
 The ALJ rested his conclusion about qualifications on the fact that Dr. Goldblatt was board-certified in six areas related to pathology; is a fellow of the College of American Pathologists and the American Society of Clinical Pathologists; and has performed 2,000 coal miner autopsies over the past 20 years. J.A. 158-59. While Drs. Kleinerman and Goldblatt have impressive credentials, it was not unreasonable for the ALJ to find that Dr. Goldblatt's opinion deserved the greatest weight.
 
 
 14
 Consolidation also argues that the views of Drs. Shelley and Gaziano did not support Dr. Goldblatt's opinion. Dr. Shelley did not find evidence of pneumoconiosis itself, but did note the existence of fibrotic foci that were "suggestive" of mild pneumoconiosis. His discovery of the fibrotic foci therefore corroborates an opinion that pneumoconiosis was present.
 
 
 15
 Dr. Gaziano found the existence of "mild pneumoconiosis," but indicated that it was not a contributing cause of death. The ALJ credited the first conclusion, but found the second "equivocal" and therefore rejected it. Consolidation argues that this treatment of Dr. Gaziano's opinion was "blatant[ly] selective." However, Dr. Gaziano's statements about causation could support different interpretations. In response to one question on an evaluation form, asking whether pneumoconiosis was a "substantially contributing cause or factor" of death, Dr. Gaziano gave the terse answer "No." But at the bottom of the same page, in his own handwriting, he elaborated that the pneumoconiosis "would not have significantly affected the outcome from [Freme's] heart disease." Whether Freme would have died from heart disease anyway is irrelevant under the governing legal standard for causation; the issue is whether pneumoconiosis hastened his death in any way. Dr. Gaziano's anomalous statement creates doubt about his one-word answer to the question on the form. It is not apparent whether Dr. Gaziano thought that pneumoconiosis hastened Freme's death to any degree. Accordingly, the ALJ was justified in considering his statements about causation to be "equivocal" and unpersuasive. See Warman v. Pittsburg & Midway Coal Mining Co., 839 F.3d 257, 262 (6th Cir.1988) ("A judge need not accept the entire testimony of one witness as true as to all aspects when confronted with conflicting evidence.").
 
 
 16
 Finally, Consolidation argues that Dr. Goldblatt's "lone opinion" cannot outweigh the views of all the physicians Consolidation pres ented who concluded that pneumoconiosis was not present and did not cause Freme's death. It is the ALJ's responsibility, however, to weigh contradicting evidence presented by the parties. Doss v. Director, Office of Workers' Compensation Programs, 53 F.3d 654, 658 (4th Cir.1995). It is not the role of this Court to set aside a factual finding simply because it finds the opposite conclusion more reasonable or more strongly supported by the evidence. Id. at 659. The ALJ had a reasonable basis for accepting Dr. Goldblatt's conclusions as to the existence of pneumoconiosis and its effect on Freme, and it found those conclusions corroborated by the views of other evaluating physicians. There was substantial evidence for the ALJ's conclusion.
 
 IV
 For the reasons stated, the decision is
 
 17
 AFFIRMED.