In the
# United States Court of Appeals
### For the Seventh Circuit

No. 01-3986

MAXINE LIVERMORE,

*Petitioner,*

*v.*

AMAX COAL COMPANY, and DIRECTOR,
OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents.*

On Petition for Review of a Decision
of the Benefits Review Board,
United States Department of Labor
No. 00-BLA-693

ARGUED MAY 15, 2002—DECIDED JULY 25, 2002

Before FLAUM, *Chief Judge*, BAUER and RIPPLE, *Circuit Judges.*

BAUER, *Circuit Judge.* Maxine Livermore, widow of deceased coal miner Billy Livermore, sought federal black lung benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. §§ 901-945. A district director from the Office of Workers' Compensation Programs of the Department of Labor denied the claim for benefits. Maxine Livermore then requested an administrative hearing. An administrative law judge (ALJ), after reviewing the evidence, found that Billy Livermore's death was caused, at least

in part, by coal workers' pneumoconiosis, and awarded benefits to Maxine Livermore. Amax Coal Co. appealed the ALJ's decision to the Benefits Review Board of the Department of Labor (BRB). The BRB vacated the ALJ's decision, finding the ALJ had failed to properly weigh and consider all the evidence. On remand, the ALJ denied benefits, and the BRB affirmed. Maxine Livermore now appeals the decision to deny benefits. Because the ALJ's ruling is supported by substantial evidence, we affirm.

## BACKGROUND

Billy Livermore was an underground coal miner for over forty years. He died at the age of sixty-four. His treating physician, in his final diagnosis, noted "coal workers' pneumoconiosis" as one of Livermore's aliments. The doctor who issued the certificate of death concluded the immediate cause of death was hemorrhagic shock (blood loss) due to esophageal and stomach bleeding. Contributing causes were respiratory failure, severe chronic obstructive pulmonary disease, and "probable" coal workers' pneumoconiosis. The autopsy report, written by another doctor, concluded that there were signs of mild anthracosis[1] in Livermore's lungs.

Maxine Livermore and Amax Coal Co. each hired experts to interpret the findings outlined above and give medical opinions as to the cause of Billy Livermore's death. Maxine Livermore's expert, Dr. Miles Jones, concluded that Billy Livermore's pneumoconiosis played a significant role in causing his death. Amax's experts, Dr. Edmond Crouch, Dr. Jerome Kleinerman, Dr. Raphael Caffrey, and Dr. Richard L. Naeye, all found no evidence of

---

[1] The regulations, 20 C.F.R. § 718.201, include anthracosis as one of the diseases constituting clinical pneumoconiosis.

coal workers' pneumoconiosis. The treating physician and the two doctors who conducted postmortem examinations found signs of pneumoconiosis. Dr. Gregory J. Fino prepared a report, not attributed to either party, concluding there was no evidence of pneumoconiosis. Finally, an independent medical expert, Dr. Peter G. Tuteur, opined that there was not enough significant pathology to indicate Billy Livermore suffered from pneumoconiosis.

The ALJ found that the postmortem evidence showed Billy Livermore had anthracosis, which was sufficient to establish that he had clinical pneumoconiosis. *See* 20 C.F.R. § 718.201 and 20 C.F.R. §§ 718.202(a)(2), (a)(4). The ALJ credited the opinions of the physicians who actually conducted the biopsy and autopsy evidence, over Amax's experts, who only examined the results of the autopsy. *See Peabody Coal Co. v. Shonk*, 906 F.2d 264, 269 (7th Cir. 1990) (holding that it is permissible for an ALJ to credit the opinions of physicians who perform an autopsy over those who merely view the results). The ALJ also concluded that Billy Livermore's respiratory conditions, which were caused or exacerbated by the coal dust exposure, "hastened his death". Thus, the ALJ found Maxine Livermore had established that Billy Livermore's death was attributable to pneumoconiosis under 20 C.F.R. § 718.205 and awarded benefits.

On petition for review, the BRB reversed the award, finding the ALJ did not resolve conflicting evidence nor weigh the evidence properly. However, the BRB affirmed the ALJ's finding that the presence of pneumoconiosis was established by autopsy and biopsy evidence. The BRB noted that the ALJ gave undue weight to the fact that several physicians were unable to rule out whether Billy Livermore's respiratory problems were related to or caused by coal dust exposure. The BRB also pointed out there was little affirmative evidence demonstrating the respiratory conditions were caused by coal dust exposure, and

that these conditions led to Billy Livermore's death. The BRB concluded that the ALJ's decision was based mostly on a negative inference and could not be sustained.

On remand, the ALJ throughly reviewed the conflicting medical opinions. Drs. Browne, Houser, and Jones found that Billy Livermore's death was due, at least in part, to pneumoconiosis.[2] The other physicians, Drs. Tuteur, Kleinerman, Naeye, Caffrey, and Fino, concluded that pneumoconiosis did not cause or hasten Billy Livermore's death. After examining the evidence, the ALJ found that Drs. Fino and Tuteur's opinions were entitled to greater weight because of their "outstanding qualifications in the area of pulmonary medicine". Furthermore, the ALJ stated that the evidence did not "prove" Livermore's death was due to pneumoconiosis. Thus, the ALJ denied benefits, and, on appeal, the BRB affirmed.

## ANALYSIS

A. *Standard of Review*

Maxine Livermore appeals the BRB's order affirming the ALJ's decision denying benefits. Although, Maxine appeals the BRB's final order, we review the conclusions of the ALJ to determine if the ruling is supported by substantial evidence and in accordance with the law. *See Peabody Coal Co. v. Director, Office of Workers' Compensation Programs*, 972 F.2d 178, 180-81 (7th Cir. 1992); *Arnold*

---

[2] According to the record, only Dr. Jones directly linked pneumoconiosis as the main or significant cause of Billy Livermore's death. Dr. Houser listed coal workers' pneumoconiosis as one of many ailments which contributed to Livermore's demise. And Dr. Browne concluded that respiratory failure, which led to Billy Livermore's death, was due, in part, to "probable" coal workers' pneumoconiosis and other "significant conditions".

*v. Peabody Coal. Co.*, 41 F.3d 1203, 1206 (7th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Consolidation Coal Co. v. Office of Workers' Compensation Programs*, 54 F.3d 434, 435-36 (7th Cir. 1995) (citations omitted). To determine if there is adequate evidence to support the ALJ's conclusion we review the entire record, but we will not substitute our judgment in place of the ALJ's or reweigh evidence. *Id*.

B. *Substantial Evidence*

The burden of establishing the miner died as a result of pneumoconiosis or that pneumoconiosis substantially contributed to the miner's death is on the claimant. 20 C.F.R. § 718.205(a). A claimant can recover benefits if "the death was caused by complications of pneumoconiosis." 20 C.F.R. § 718.205(c)(2). The fact that pneumoconiosis caused or contributed to the cause of death need be established by "competent medical evidence." 20 C.F.R. §§ 718.205(b)(1), (c)(1).

Amax Coal argues that pneumoconiosis did not cause or was not a substantial cause of Billy Livermore's death. While Maxine Livermore concedes that pneumoconiosis did not directly cause Billy Livermore's death, she relies on the definition of "legal pneumoconiosis" in 20 C.F.R. § 718.201(a)(2), asserting that the exposure to coal mine dust exacerbated Billy's asthma and was a substantially contributing factor in his death. *See* 20 C.F.R. § 718.205(c)(2). In what is akin to a proximate cause chain-of-events argument in torts, Maxine asserts that pneumoconiosis caused Billy's asthma and other respiratory problems. The respiratory problems, in turn, caused Billy to be treated with steroids. The steroid treatment, in turn, exacerbated his bleeding ulcer and led to the esophageal and stomach bleeding which ultimately and directly caused Billy Livermore's death.

Maxine Livermore's causal chain-of-events argument, if proven, would entitle her to benefits because Billy Livermore's pneumoconiosis condition hastened his death. *See* 20 C.F.R. § 718.205(c)(2); 20 C.F.R. § 718.201(a)(2); *Peabody Coal Co. v. Director, OWCP*, 972 F.2d at 183-84 (holding applicable the Director's interpretation of 20 C.F.R. § 718.205(c)(2), to "mean anything that has 'an actual or real share in producing an effect and that any condition which hastens death fits this description.'") (citations omitted).[3] However, the ALJ ruled that there was insufficient proof that pneumoconiosis caused the respiratory problems, which cuts off Maxine's chain-of-events argument at the beginning. The ALJ, on remand, felt the conflicting expert evidence showed that pneumoconiosis was not the cause or substantial cause of death.

Almost the entirety of Maxine Livermore's argument goes to the weight of the evidence; that the ALJ credited Amax's experts over her own experts. However, Maxine does point to additional problems with the ALJ's decision and some of the evidence. She notes that the overall diagnosis of Amax's experts are still in conflict with the ALJ's undisturbed conclusions that Billy Livermore did, in fact, have pneumoconiosis. Hence, she argues, the ALJ should have disregarded Amax's experts' opinions because they are in direct conflict with the ALJ's initial finding. Stated another way, Maxine argues that Amax's experts' conclusions that Billy Livermore's death was not attributable in any way to pneumoconiosis, cannot be credited because the experts first concluded that Billy Livermore did not even have pneumoconiosis. In addi-

---

[3] Nonetheless, Congress could choose to provide black lung benefits to any miner who has any respiratory aliments after working in a mine, but, unfortunately, the statute and regulations currently require coal workers' pneumoconiosis cause or be a substantial contributing cause or factor in the miner's death.

tion, Maxine Livermore asserts that the ALJ agreed with her the first time, but after being reversed by the BRB simply agreed with the BRB's assessment of the evidence.

Amax's experts' opinions are in partial conflict with the ALJ's and BRB's undisturbed finding that Billy Livermore did have clinical pneumoconiosis. And Amax's experts' initial conclusions, that Billy Livermore did not have pneumoconiosis, probably influenced their later conclusions that Billy's death was not caused by pneumoconiosis. However, several of the experts did assume, for part of their opinions, that Billy Livermore did have pneumoconiosis and still concluded that it did not cause his death. Furthermore, as Amax notes, Billy Livermore had numerous other substantial health problems, many of which are not related to asthma, breathing, or pneumoconiosis. Although, the ALJ appears to have flip-flopped after the BRB reversed the original award, "the weighing of expert opinions is the province of the ALJ, not this court." *Peabody Coal Co. v. Shonk*, 906 F.2d at 269. Hence, in a case of dueling experts such as this one, the ALJ, after a thorough and careful consideration of all the evidence, can conclude that the opinion of certain experts are more authoritative than other experts. Nevertheless, the ALJ must articulate a reason and provide support for favoring one opinion over another. *See Peabody Coal Co. v. Director, OWCP*, 972 F.2d at 181-82.

Amax's experts and the third-party experts opined that Billy Livermore's death was not caused by or contributed to by pneumoconiosis. In contrast, only Dr. Jones, Maxine Livermore's expert, positively concluded that pneumoconiosis was a significant factor in Billy Livermore's death. The other two experts listed pneumoconiosis as one of the contributing causes. The ALJ gave more weight to the opinions of Amax's doctors, finding they had superior qualifications (specialities in pulmonary medicine) and that their opinions were more specific and well supported. The

ALJ also found that the expert opinions to the contrary were not entirely reliable based on all the evidence and conflicting opinions.

This careful weighing of the evidence demonstrates that the ALJ's finding is supported by substantial evidence. *See id.* at 180-81. To say that we might have reached a different conclusion is beside the point because it is the province of the ALJ to weigh expert opinions. *See Peabody Coal Co. v. Shonk*, 906 F.2d at 269. The ALJ did not simply countenance Amax's experts' opinions because they were more numerous, which would be improper. Instead, the ALJ reviewed all the opinions, qualifications of the experts, and resolved the conflicting reports in a thorough and logical manner.

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*