In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 23-1083

SAFECO INSURANCE/LIBERTY MUTUAL SURETY,

*Petitioner*,

*v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
United States Department of Labor,

*Respondent*.

———————

Petition for Review of an Order of the
Benefits Review Board.
No. 21-0274 BLA

———————

ARGUED OCTOBER 30, 2023 — DECIDED JUNE 10, 2024

———————

Before EASTERBROOK, RIPPLE, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. This appeal concerns a former coal miner who developed a serious lung condition after working underground for nearly two decades. Based on a thorough canvass of the medical record, an administrative law judge determined that the miner was disabled within the meaning of the Black Lung Benefits Act. We now consider whether that decision erroneously applied a regulatory preamble as

though it were binding law and contained factual findings that lacked the support of substantial evidence. Finding no error on either front, we affirm. In doing so, we emphasize the broad discretion ALJs enjoy when evaluating competing medical theories, the weight ALJs may properly attribute to the perspective of the Department of Labor on such issues, and the significant deference owed to ALJs' medical findings and scientific judgments on appeal.

**I**

Richard McLain worked in a coal mine for 18 years. All the while he smoked cigarettes—about half a pack a day. In 1985 McLain experienced a heart attack, prompting him to quit smoking and retire. But his lungs continued to deteriorate.

In 2010 a pulmonologist found that McLain suffered from an obstructive lung disease causing chest pain and shortness of breath. Soon afterwards, McLain filed a claim under the Black Lung Benefits Act, alleging that years of mine work had left him totally disabled from a pulmonary perspective.

By the time he sought benefits under the Act, McLain's former employer, Old Ben Coal Company, had been liquidated through bankruptcy. See *Old Ben Coal Co. v. Off. of Workers' Comp. Programs*, 476 F.3d 418, 419 (7th Cir. 2007). So Liberty Mutual Insurance Company, the surety guaranteeing Old Ben's debts under the Act, contested liability on the coal company's behalf. Liberty and its wholly owned subsidiary Safeco also filed the petition currently under review, naming themselves and Old Ben as parties in interest. Because the only proper petitioner in a case with a defunct mine operator is the surety or insurer responsible for payment, we have altered the case caption to omit any reference to Old Ben. For

ease of readability, however, we refer to the petitioner as "Old Ben" in keeping with our past practice. See, *e.g.*, *Zeigler Coal Co. v. Off. of Workers' Comp. Programs*, 490 F.3d 609, 611 n.1 (7th Cir. 2007).

Old Ben argued that McLain was ineligible for benefits because his condition was not "totally disabling" and had primarily resulted from smoking. In support, it offered testimony from Drs. David Rosenberg and Peter Tuteur, experts in internal and pulmonary medicine. Both physicians opined that McLain's treatment records pointed to tobacco smoke as the main cause of his lung damage.

An administrative law judge disagreed. After reviewing the medical record and conducting a hearing, the ALJ found that McLain suffered from pneumoconiosis—a totally disabling pulmonary condition that arises from coal mining. So the ALJ awarded benefits to McLain under the Act.

The ALJ's decision drew significantly from a set of medical findings regarding how to distinguish between lung disorders arising from coal dust and those arising from tobacco smoke. Those findings came from the preamble to an expansive set of regulations published by the Labor Department in 2001. The ALJ also relied on McLain's medical treatment records, a Department-sponsored examination, and testimony from a third medical expert.

Old Ben appealed the ALJ's decision to the Benefits Review Board, contending that the ALJ erroneously treated the 2001 preamble as if it were binding law and made factual findings unsupported by the medical record. Neither argument prevailed, and the Review Board affirmed the benefits decision in full. Old Ben now appeals.

## II

The Black Lung Benefits Act provides compensation to coal miners who are "totally disabl[ed] … due to pneumoconiosis." 30 U.S.C. § 922(a)(1). "Pneumoconiosis" is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." *Id.* § 902(b). The Act establishes a rebuttable presumption that claimants have pneumoconiosis if they worked in an underground coal mine for at least 15 years and experience a totally disabling respiratory or pulmonary impairment. See *id.* § 921(c)(4).

When adjudicating claims under the Black Lung Act, an ALJ's findings must be "rational, supported by substantial evidence and consistent with governing law." *Old Ben Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 292 F.3d 533, 538 (7th Cir. 2002). "Substantial evidence" refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted); see also *Livermore v. Amax Coal Co.*, 297 F.3d 668, 670 (7th Cir. 2002).

### A

Old Ben argues that the ALJ erred by applying the 2001 regulatory preamble as though it were binding law akin to a statute. It contends that the ALJ treated the preamble's medical findings as irrefutable gospel, refusing to engage with contrary positions or consider opposing evidence. We disagree.

On one level, Old Ben is correct. Regulatory preambles lack the force of law and have no binding effect on administrative adjudication. See *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 569–70 (D.C. Cir. 2002). In resolving a black-lung claim,

ALJs may ignore, sideline, or reject any findings from a regulatory preamble that they find unpersuasive. But the inverse is also true. Any ALJ who views a preamble as convincing may adopt its findings even in the face of counterevidence. See *Midland Coal Co. v. Dir., Off. of Workers' Comp. Programs* [*Shores*], 358 F.3d 486, 490 (7th Cir. 2004) (recognizing that it is appropriate to defer to Labor Department positions on black-lung-related issues, even in the absence of formal rulemaking); *Harman Mining Co. v. Dir., Off. of Workers' Comp. Programs*, 678 F.3d 305, 314 (4th Cir. 2012). Indeed, we have observed that it can be "sensible" for an ALJ to do so, given the considerable research and deliberation that often goes into the notice-and-comment process that accompanies the promulgation of federal regulations pursuant to the Administrative Procedure Act. See *Consolidation Coal Co. v. Dir., Off. of Workers' Comp. Programs* [*Beeler*], 521 F.3d 723, 726 (7th Cir. 2008).

Our review of the decision below leaves us convinced that the ALJ consulted the 2001 preamble as a matter of discretion, not from some misguided impression that its findings were legally mandated. The ALJ emphasized that Old Ben was free to "challeng[e] or disput[e] the science credited by the DOL in the preamble" and invited the company to "offer its own expert opinions and medical evidence regarding the topics from the preamble it [sought] to dispute." After Old Ben accepted the invitation, the ALJ appropriately weighed the company's expert testimony against the preamble's scientific conclusions. The fact that the ALJ ultimately sided with the latter does not itself constitute legal error.

Of course, an ALJ's discretionary choice to rely on portions of a regulatory preamble must find support in

substantial evidence—as must every aspect of an ALJ's decision. But the decision below easily clears this low bar.

A coal company seeking to establish that no "reasonable mind might accept" the 2001 preamble "as adequate to support" an ALJ's findings faces a steep uphill climb. See *Livermore*, 297 F.3d at 670 (internal quotation marks omitted). The document spans 126 pages of dense medical analysis, cites dozens of peer-reviewed studies, and reflects considered perspectives from over 250 comments submitted during two separate rulemaking periods. Unless a coal company establishes a persuasive reason to reject the preamble's findings as objectively flawed, a citation to the document alone provides substantial evidence to support an ALJ's conclusion. See *Shores*, 358 F.3d at 490 (emphasizing that courts will defer to the Labor Department's position on scientific matters in black-lung adjudications unless "mine operators produce[] the type and quality of medical evidence that would invalidate a regulation"). Old Ben provides no such reason.

Although shouldering no obligation to cite any authorities beyond the text of the 2001 preamble to survive substantial-evidence review, the ALJ here went above and beyond. The ALJ gave specific reasons for favoring the preamble over the opinions of Old Ben's experts, explaining that "[b]ecause Dr. Rosenberg's opinion is unsupported by any reference to the medical literature, I do not find it sufficiently persuasive to invalidate or outweigh the medical principles and scientific studies accepted by the DOL in the Preamble." Elsewhere the ALJ faulted Old Ben's experts for relying on statistical generalities, unadmitted x-ray evidence, and assumptions without documentary evidence. Far from viewing the preamble as irrebuttable, the ALJ concluded based on the medical evidence

that Old Ben failed to rebut it. Any shortcomings, then, lay not in the ALJ's legal analysis but in the case that Old Ben presented below.

B

Old Ben does not limit its challenge to the ALJ's decision to adopt the 2001 preamble. It also disputes the broader finding that McLain suffered from a totally disabling condition arising from coal-dust exposure. Old Ben contends that the ALJ reached this conclusion without the support of substantial evidence, committing a host of scientific and methodological errors along the way.

The bar for what constitutes "substantial evidence" is not high. It refers merely to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See *Livermore*, 297 F.3d at 670 (internal quotation marks omitted); see also *Biestek*, 139 S. Ct. at 1154. To prevail in its challenge, then, Old Ben must demonstrate that *no* evidence in the record could permit a reasonable person to find that McLain suffered from a totally disabling lung condition that arose from coal dust. It cannot do so.

i

We start with the ALJ's conclusion that McLain was totally disabled. Old Ben argues that the ALJ erred by ignoring Dr. Rosenberg's conclusion to the contrary in an expert report submitted in 2020. The company also contends that the ALJ neglected to properly account for McLain's age when evaluating his performance on pulmonary function tests.

Although the ALJ did not explicitly mention Dr. Rosenberg's 2020 report, we do not view this shortcoming as material. True, an ALJ may not "disregard the opinion[] of [a]

qualified expert[]" "absent evidence to the contrary." *Zeigler Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 326 F.3d 894, 897 (7th Cir. 2003). But the record before us contains considerable evidence undermining Dr. Rosenberg's finding of non-disability.

Three of the four medical experts who testified before the ALJ concluded that McLain was totally disabled—including, ironically enough, Dr. Rosenberg himself. Old Ben shines a narrow spotlight on Dr. Rosenberg's 2020 report, where he concluded that McLain was "not disabled from a pulmonary perspective." But Dr. Rosenberg submitted two previous reports in 2015 and 2016, both times opining without qualification that McLain was disabled by a respiratory condition. Given this contradiction—and the lack of any intervening treatment history that might explain it—the ALJ acted well within his discretion in refusing to credit Dr. Rosenberg's change in position.

McLain's pulmonary tests also indicated total disability. Labor Department regulations dictate that patients scoring below specific values on such tests qualify as totally disabled from a pulmonary perspective. See 20 C.F.R. § 718.204(b)(2)(i). McLain's tests from 2004, 2010, and 2011 yielded qualifying results, meaning that he was totally disabled within the meaning of the Act.

Old Ben objects that the ALJ failed to adjust McLain's qualifying values to account for his age. It emphasizes that the ALJ applied values listed for patients aged 71—the oldest included in the regulations—even though McLain was 84 at the time of his most recent test. Relying on Dr. Rosenberg, Old Ben insists that the ALJ should have applied a mathematical

function called the Knudson equation to extrapolate the appropriate values for McLain's specific age.

Dr. Rosenberg may or may not be correct that an age adjustment would have reflected best practice. We take no position on the point. Our role when conducting substantial-evidence review is far more modest. We have never required—nor do we possess the subject-matter expertise to require—that an ALJ align herself with the scientific methodology we independently deem most persuasive. Our role is that of a court of review, and in that more limited role, we require only that an ALJ's choice of methodology be reasonable and informed by evidence. See *Peabody Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 972 F.2d 178, 182 (7th Cir. 1992).

The ALJ articulated a logical and educated basis for rejecting Dr. Rosenberg's approach. The ALJ observed, both correctly and charitably, that Dr. Rosenberg provided only a thin explanation for where the Knudson equation came from, how it worked, or whether it was consistent with Labor Department regulations concerning pulmonary function tests. Given that uncertainty, the ALJ reasonably opted to apply well-established guidance from the Review Board, which allows ALJs to apply 71-year-old values for older patients, rather than embrace a novel methodology of unknown provenance.

Substantial evidence supports the ALJ's determination that McLain experienced a totally disabling lung condition.

ii

Old Ben further contends that, even if McLain experienced total disability, the ALJ nonetheless erred by linking his disability to coal dust. Old Ben insists that McLain's treatment history compels a contrary conclusion: that McLain's years of

smoking were the only significant cause of his lung damage. It does not.

To receive benefits under the Black Lung Act, a claimant's pulmonary disorder need not result solely—or even primarily—from coal dust. The Act requires only that the condition be "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(2), (b). The statute further presumes that a totally disabled miner who, like McLain, worked underground for at least 15 years suffers from a dust-related condition. See 30 U.S.C. § 921(c)(4); 20 C.F.R. §§ 718.202(a)(3), 718.305(b)(1)(i)–(iii). To rebut this presumption, a coal company bears the burden of establishing that coal dust did not play any substantially aggravating role. 30 U.S.C. § 921(c)(4).

Old Ben fails to identify any evidence that could rule out coal dust as a significant factor. Drs. Rosenberg and Tuteur pointed to several aspects of McLain's medical record that, in their opinion, indicate that tobacco smoke was the primary cause of McLain's condition. Even if that were true, it would not preclude the ALJ from finding that coal dust also played an important contributing role—much less require us to hold that no "reasonable mind" could think otherwise. See *Biestek*, 139 S. Ct. at 1154.

Old Ben's argument also misses the mark by losing sight of its audience: a generalist court conducting appellate review under a deferential standard. When reviewing a record for substantial evidence, we "do not reweigh the evidence, resolve inconsistencies in the record, make credibility determinations, or substitute our inferences for those drawn below." *Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 478

(7th Cir. 2001). Our role is not to second-guess an ALJ's scientific conclusions or impose our judgment on issues of medical fact. We merely seek to ensure that an ALJ considered both sides of disputed medical issues, weighed the evidence, and reached a reasonable conclusion.

Old Ben asks us to step far beyond our role by choosing sides in a number of complex scientific disputes. It insists, for instance, that pneumoconiosis usually does not improve through lung medications, that specific types of lung emphysema stem only from smoking, and that McLain's pulmonary-exam results indicate that his smoking had an outsized impact. We decline to take a position on these highly technical issues, as we are confident (given our review of the record) that the ALJ's findings were reasonable and adequately supported. See *Beeler*, 521 F.3d at 727 ("We do not place the evidence back on the scale after the ALJ has already done so. We simply examine whether the scale was correctly calibrated.").

The medical record contains substantial evidence for the conclusion that coal dust significantly related to, or substantially aggravated, McLain's lung condition. The Act requires no more.

We therefore DENY the petition for review and AFFIRM the judgment of the Benefits Review Board.